T. B. LACY, JAMES H. MORTON, AND T. R. ERCKENBRACK, Trustees of the Right Eminent Grand Commandery of the Knights Templar of Iowa, Appellants, v. I. C. DAVIS, Treasurer, S. L. PILLSBURY, Auditor of Dickinson County; P. RAGSMUSSEN, O. S. JONES AND O. P. HAGGERTY, Members of the Board of Supervisors, and Dickinson County, Appellees.

Taxation: EXEMPTIONS. Grounds and buildings owned by a commandery of the Knight Templars, used for the appropriate objects of the organization not to exceed four days each year, and at other times as a summer resort for members of such organization and their families. but not leased or used for pecuniary purposes or benefits, are not devoted solely to the

appropriate objects of the organization, and not exempt from taxation, under Code, section 1304, exempting "all grounds and buildings used for charitable, benevolent, and religious institutions and societies, devoted solely to the appropriate objects of the institution. * * * and not leased or otherwise used with a view to pecuniary profit."

*Appeal from Dickinson District Court.*—HON. LOT THOMAS, Judge.

WEDNESDAY, OCTOBER 10, 1900.

SUIT in equity to restrain the collection of taxes assessed against certain property belonging to the Right Eminent Grand Commandery of the Knights Templar of Iowa. Plaintiffs, as trustees of the organization, allege that the property is exempt from taxation because used for charitable, benevolent, and religious purposes, and devoted to the appropriate objects of the institution. The trial court denied the relief asked, and plaintiffs appeal.—*Affirmed.*

*Cory & Arnold* for appellants.

*L. E. Francis* for appellees.

DEEMER, J.—The Right Eminent Grand Commandery of the Knights Templar of Iowa is a branch of Freemasonry. It is the highest organization of Knights Templar in the state, and has supervisory power over all local commanderies. Its membership is made up of certain Knights Templar from subordinate lodges who have held offices therein, but any Knight Templar may attend its meetings. In the year 1885 it acquired title by gift to a tract of land on the shore of Spirit Lake, comprising something over 20 acres. Thereafter, and about the year 1892, it erected buildings on these grounds, one of which is about 100 feet in length by 30 in width, two stories high; another is about 30 by 40 feet, with a kitchen attachment (this building is also two stories high, the upper one being used as a hall for

the meetings of the organization) ; and the third building is a bath house about 10 feet square. The first named building has about 100 rooms, each of which is furnished with a cot, a table, and two chairs. The second is the dining room, kitchen, and assembly hall; the kitchen and dining room being furnished with the usual utensils and fixtures necessary to the purposes intended. The grand commandery holds its annual sessions, that last for three or four days, on these grounds, and the members, with their families and invited guests, are privileged to occupy the rooms so long as they choose, for a nominal fee. Meals are prepared in the kitchen and served to members in the dining room, by some one engaged for that purpose, at but slightly more than cost. While the meetings of the commandery last but three or four days, all the Knights Templar are privileged to use the grounds and buildings during the summer season, for a nominal fee, and the evidence shows that for many years members of the order have made the grounds a summer resort. Most of these people have gone to the "Park," as it is called, two or three weeks before the meeting of the grand body, and have remained two or three weeks after the meeting closed; although, as we understand it, they were privileged to stay and enjoy the advantages of the place as long as they pleased. A pier is built out into the lake, and boats land at this pier. Small pleasure boats are also kept, and bathing, boating, and other pastimes are indulged in. Knights Templar may also camp on the grounds, as we understand it, at any time they feel inclined, and, save for the time the grand commandery is in session, the place differs in no respect, except as to its privileges, from any other summer resort. The contention of appellants is that the grounds and personal property are exempt from taxation under section 1304 of the Code, the material part of which is as follows: "All grounds and buildings used for charitable, benevolent and religious institutions and societies, devoted solely to the appropriate objects of these in-

stitutions, \* \* \* and not leased or otherwise used with a view to pecuniary profit, \* \* \* are not to be taxed." It is conceded that the grand commandery does not lease or otherwise use the grounds or personal property with a view to pecuniary profit. To be entitled to the exemption claimed, plaintiffs must show that the body they represent is a charitable, benevolent, or religious institution, and that the property is devoted solely to the appropriate objects of that institution. Exemption from taxation will not be presumed or implied. The presumption is in favor of taxation and against exemption, and, if there be a reasonable doubt, it must be in favor of the state. *Central Railroad & Banking Co. v. Georgia,* 92 U. S. 665 (23 L. Ed. 757). Whether the grand commandery belongs to the class that may claim the exemption we do not find it necessary to determine; for, conceding it to belong to the class, it must appear that the property is devoted solely to the apropriate objects of such institutions. It is only when the property is directly used for charitable, benevolent, or religious purposes that it is exempt from taxation. The organization to which the property belongs does not use it, for the appropriate objects thereof, to exceed four days in each year. At other times it is used simply as a summer resort. We doubt very much whether the persons using it at other times than during the meetings of the grand body are attending to their religious devotions, and are quite certain that they would resent the notion that in using it for a summer resort they were the objects of charity or of benevolence. To be devoted solely to the appropriate objects of the institution, it must appear that the use is for charitable, benevolent, or religious purposes. That it is resorted to by a privileged class during the usual vacation period, for the purpose of rest and recreation, is apparent from the undisputed facts. Such use is not exclusively for the purposes contemplated by the statute. Our conclusion finds support in the following among other cases: *Mulroy*

*v. Churchman,* 52 Iowa, 238; *Id.,* 60 Iowa, 717; *Kirk v. St. Thomas' Church,* 70 Iowa, 287; *Nugent v. Dilworth,* 95 Iowa, 51; *Foy v. Coe College,* 95 Iowa, 691; *Manresa Institute v. Town of Norwalk,* 61 Conn., 231 (13 Atl. Rep. 1088). There is no reason why the grand commandery should not bear its just and equitable proportion of the burdens of taxation on the property owned by it at Spirit Lake. The judgment is therefore AFFIRMED.

GRANGER, C. J., not sitting.