W. W. MORROW, Treasurer of State, v. CHAS. A. SMITH, Executor, et al.

**Collateral inheritance tax:** EXEMPTIONS: CHARITABLE INSTITUTIONS: MASONIC LODGE. A devise of property to a charitable institution is not subject to a collateral inheritance tax; and it is held that a Masonic lodge, all of whose funds are used for expenses of the order and for charity and are dispensed through the medium of a committee of charity, and whose members pay an initiation fee and assessments but receive no benefits except as

objects of charity, is held to be a charitable institution within the meaning of the statute; so that a bequest of real property to the order, with directions to use the income for charity, is not subject to the tax.

*Appeal from Wapello District Court.*—HON. D. M. ANDERSON, Judge.

TUESDAY, JANUARY 18, 1910.

THE plaintiff, as Treasurer of state, brought this action against the defendant as executor of the estate of James E. Wilson, deceased, and against certain devisees named in his will, to recover a collateral inheritance tax upon the property devised to such devisees. Relief was granted as prayed as to all defendants save one, viz., the local Masonic lodge of Ottumwa. As to such defendant devisee, the trial court dismissed the petition. From such order of refusal, plaintiff appeals.—*Affirmed.*

*H. W. Byers,* Attorney-General, and *George Cosson,* Assistant Attorney-General, for appellant.

*A. W. Enoch* and *McNett & McNett,* for appellees.

EVANS, J.—The deceased died testate on June 6, 1905. By his will he devised certain property to the local Masonic lodge, of which he was a member, the same being known as "Ottumwa Lodge, No. 16, A. F. and A. M." The property devised was real estate, and the purpose of such devise was declared to be that the devisee "use the income of the same for charity." Such will contains two other bequests to the same lodge with a *proviso* that all the proceeds should be used for charitable purposes. These bequests, however, must both fail for want of funds, and the lodge will only be able to take under the devise of real estate first noted. The real estate covered by such devise

was duly appraised at the sum of $10,000, and the plaintiff claims that it is subject to the collateral inheritance tax. This claim is resisted by the devisee. It claims that such property is not subject to a collateral inheritance tax because it is a devise to a charitable institution. The only question in the case is whether this Masonic Lodge is a charitable institution. The question thus presented is one of mixed law and fact.

So far as material to this case, section 1467 of the Code is as follows: "All property within the jurisdiction of this state . . . which shall pass by law or by the statutes of inheritance . . . to any person in trust or otherwise, other than to or for . . . charitable, educational, or religious societies or institutions within this state, shall be subject to a tax of five percent of its value. . . ." It is manifest, therefore, that the plaintiff is entitled to recover five percent of the value of this property unless the devisee is a charitable institution within the meaning of this section. Evidence was taken upon that question on behalf of the defendant. Some further information is vouchsafed to us in the briefs of counsel. In our consideration of facts, however, we are necessarily confined to those appearing in the abstract. The subject is one which furnishes only a very limited range for judicial notice. The facts which were testified to by witnesses in this case were in no manner disputed upon the trial. The real controversy of the parties is over the conclusion to be drawn from the facts so testified to. The defendant executor was one of the witnesses in the case. He had been a member of the devisee lodge for many years, and was named as executor by the testator.

The following summary of his evidence as abstracted by the appellant is a substantial presentation of the facts as they appear in the record:

They take care of any needy members of the organiza-

tion or institution and the sick, any one that was needy. That is the principle that we are taught. When a member is sick, the lodge furnishes nurses, and provides everything that is absolutely necessary for his keeping, and, if the wife is sick, poor, in distress, or needs charity, she is taken care of, and nurses, supplies, and assistance furnished just the same. If a member of the lodge or the wife of some member should die unable to have proper burial, the lodge would bury them at its own expense, and would provide for a widow of a member if she was not otherwise provided for. It is the regular practice and business of the lodge to look after her, and, if a widow should be left by a member of the lodge without sufficient means to dress and clothe and send her children to school, the lodge takes notice of the situation, and helps out. The lodge maintains a charity committee regularly as a part of its business and practice. It is composed of Worshipful Master, Senior Warden, and Junior Warden. The committee goes around and sees the members and furnishes needed assistance. They have the power to do it, and the fund from which these funds are supplied, as well as the general expenses of the lodge, is raised by membership fees and dues. A member coming into the lodge pays a certain sum for initiation. The members must pay assessment every year to maintain the lodge and extend its duties. Two dollars and seventy-five cents per year for each member. Emergencies sometimes arise for more money and assessments are sometimes made or money collected from the members. They pay the tiler. The lodge does not go to work and declare money and pay it back to its members. A member has no pecuniary benefit from the lodge unless he is an object of charity. This lodge contributes to the Grand Lodge of the state every year. The Grand Lodge carries on charities in addition to subordinate lodges. I do not know whether there is what is called a 'Masonic Home' for infirm and poor members that can not support themselves maintained in this state or not. I couldn't say whether there is an orphans' home at Davenport maintained by the Masonic Lodge of this state. No member paying his dues or yearly contribution or membership fee ever gets any part of the funds of the lodge back unless he becomes a charity member. Whatever he does by

way of services on the committee he does gratuitously and without reward. The lodge out of its funds collected from the sources stated pays first its expenses of carrying on its lodge duties, its rent of the hall if it has one, and the like of that, and the balance of it goes to charity, or the fund that charity can draw on at any time. No member of the lodge receives for what he pays in any pecuniary benefit unless he is a charity member. The lodge issues no stock to any member such as a corporation issues. It simply receives the money as initiation fees, and gives a receipt for it. It is used for the necessary expenses of the lodge and for charity. That has been the practice of this lodge during all the time that I have known it, and it still does it. The lodge has never carried on any kind of business to make money whatever to further its lodge affairs. I do not know that it has a store or anything of that kind. What I have stated about distributing charity to needy members and their families is the practice carried on constantly by the lodge. There has been no time since I have been connected with the lodge when any members or their families were not receiving benefit from the charities of the lodge. We always have this class of persons that are receiving benefits. As a rule, the lodge has given attention constantly to some sick persons and their families belonging to the lodge, and rendered aid and assistance to widows of deceased members that are unable to take care of themselves. The lodge isn't engaged in any way in the business of making money. It hasn't been since I knew it. The deceased, James E. Wilson, was an active and zealous member of this lodge and a liberal giver to the charities thereof. He held all the principal offices in the lodge—Worshipful Master generally. He was very much charitably inclined in his giving and in his connection with the lodge. He gave that much attention. He was at one time a member of the charity committee of the Grand Lodge of the state, and was much devoted to the order of the Masons. He left no wife nor children, and was single at the time of his death. The lodge has accepted the bequest in the will of the deceased of a piece of property located on Second Street here, being lot No. 237 in the city of Ottumwa, which was appraised at $10,000 and has taken possession thereof. I know that the will provided that this is to be devoted to charity.

This testimony was supplemented to some extent by that of other witnesses which we will not now set forth.

Section 1 of chapter 6 of the by-laws and rules of the order is as follows: "Chapter Six—Section One—Standing Committees. There shall be two standing committees of the lodge, viz.: A committee of charity and a committee of finance. Committee of charity—The committee of charity shall consist of the Worshipful Master and the Wardens. The duties of the committee of charity shall be to dispense the benevolence of the lodge so as to relieve human distress in the most speedy and practicable manner. The committee of charity shall have power, at any time, to draw upon the treasurer, through its chairman, the Worshipful Master for a sum not exceeding five dollars at a draft to be bestowed upon a distressed worthy master mason, his wife, widow, or orphan child, or upon any other distressed worthy applicant for aid. The committee of charity may take such measures, in employing nurses to wait upon the sick, engaging the burial of the dead, etc., as any sudden contingency may demand, and present the bill through the finance committee, for settlement." The duties of the finance committee as defined therein are substantially those of an auditing committee.

Taking the testimony as a whole, it is quite manifest that one of the purposes of the devisee lodge is to extend relief to human need and distress. This, however, is not its only function. Nor can it be said that the relief which it extends is public relief, nor that its charity is public charity. As to the comparative importance of its charitable functions, it is to be noted from the evidence that, aside from the expenses incident to its maintenance as a society, all of its expenditures and distribution of its funds is devoted to the help of the poor. With very rare exceptions, such relief is extended exclusively to the membership of the order, and to relatives of members, and to surviving relatives of deceased members.

The substance of the argument on behalf of plaintiff is that an institution is not a "charitable" institution within the meaning of the law unless the purpose of its existence is "purely" or "solely" or "primarily" charitable. If it has other important purposes or functions, and especially if such other functions are predominant, then, it is claimed, it can not be regarded as a charitable institution simply because it does dispense charity. The general theory urged is, in substance, that the charity contemplated by law is a "public" charity, catholic and universal, reaching out to all persons, rather than those limited charities which expend all their resources sympathetically to relieve the distress which is hard by and whose cry is more readily heard because it is within a fraternal circle. If this is the proper construction to be put upon the language of our statute, then the plaintiff is entitled to recover.

This subject is one which has been dealt with by many statutes in many states. Many states have extended exemption from taxation to various institutions of an educational, religious, or charitable character. So far as charitable institutions are concerned, some statutes have in terms confined the exemptions to those institutions which are "purely" charitable or "solely" charitable. Other statutes have in express terms confined the exemption to "public charity." A partial illustration may be found in our own section 1304 of the Code. This section exempts from taxation all grounds and buildings of charitable institutions "devoted solely to the appropriate objects of these institutions." Section 1467 extends exemption for collateral inheritance tax to "charitable institutions" without restriction or qualification, except such as the term itself imports. Unless the qualification contended from by the plaintiff inheres in the term itself, we would not be justified in grafting a qualification upon it. This is especially true where the qualification contended for is one which is made by express terms in many statutes and one which could have been readily

and naturally made by our own Legislature if such had been its purpose. Our reluctance to add these qualifying terms by construction to this section of the statute is emphasized by a consideration of the authorities cited in plaintiff's brief. Practically all of the cases cited in this brief deal with statutes which contain these qualifications in express terms. This remark is not applicable to the English cases cited, nor is it applicable to the case of *Bangor v. Masonic Lodge,* 73 Me. 428 (40 Am. Rep. 369). In the latter case a statute not unlike our own was under consideration. The course of the argument, however, in the opinion assumed that a charitable institution was one which dispensed "public" charity, and one whose public charity was its "primary and exclusive object." The real argument of the opinion was devoted to the questions whether the charity dispensed by the Masonic Lodge was "public" or not, and whether such charity was its primary and exclusive object. The following excerpts are indicative of the general argument: "The inquiry is whether it is a public charity or a private charity for the exclusive aid of its members." The final conclusion reached upon the evidence was that the facts "negative the idea that charity is the primary and exclusive object of the institution." Granting this argument as far as it goes, the question still remains whether an institution may be deemed charitable for the purpose of the statute under our consideration, though it be not exclusively so, and though its charity be something less than public. Let it be noted that we are dealing now, not with the general subject of taxation, but with a specific statute which imposes a specific tax upon the succession to property, and confines such tax to such succession to property as operates in favor of a limited class of beneficiaries. The manifest purpose of the statute is to impose a special burden upon benefits arising by succession to persons whose claims upon the bounty of the testator are somewhat distant and outside the ordinary

range of inheritance. No tax is imposed upon a bequest to a parent or wife or child. The same exemption is extended in general terms to institutions denominated as charitable, educational, and religious. The particular form and identity of these various institutions is manifold indeed, but they are all regarded as beneficent in their purposes, and as uplifting and upbuilding in their activities. They are essentially altruistic in motive. Their essential purpose is to dispense rather than to acquire. They are not found in the marts. They do not exist for profit. What they do acquire must come by voluntary gift; and what they receive they receive as trustees to be dispensed again in pursuance of the purposes of the institution. Because these institutions pursue and perform these high and humane purposes, many humane and benevolent people commit gifts into their hands to be dispensed through the channels of their activity. By common consent they make for the public good. They are a part of the life of the people. If we were to take these institutions one by one, we would find each one limited in the scope of its activities. Perhaps not one is wholly catholic and universal except such as are maintained by public taxation and appropriation. Gifts and bequests by individuals to such institutions are popularly regarded as benevolent and charitable, and the donor of such gifts is deemed to be public spirited. It is not at all unreasonable that the Legislature should deem it proper to impose no succession tax upon a gift to such an institution. On the contrary, the public good may be quite as well served by offering an exemption from such tax. Such exemption carries with it some measure of inducement to testators to confer their bounty through these instrumentalities upon a large, and always varied, part of the public, and usually that part of it which "hath no helper." If such was the purpose of the Legislature, it was commendable. And, if such is the natural import of the language used, we are not driven to a forced or qualified

construction of it in order to save the act from being vicious legislation.

Turning now to the facts under consideration in this case, they leave no room for doubt but that a very substantial part of the activity of this order is devoted to the help of those who are needy and in distress. Granted that its benevolence is principally confined to those within its immediate circle, it is nevertheless commendable as far as it goes, and in the interest of the public good. It could not, if it would, take care of all destitution. If it does all that it can, it does well; and, if it expends what it has upon those whose need it knows best, so be it. In some such wise must all ministry be done. The testator was a member of this particular lodge for many years. He was said to be charitable in his own nature, and was greatly interested in the charities of his order. Through the instrumentalities of his lodge he desired to continue his benevolences for the future. That he regarded the order as a charitable institution in its relation to his bequest is manifest. But that is not binding upon the plaintiff. That a Masonic Lodge is a "charity" has been often held even in those cases where exemption has been denied it. In such cases it has usually been held that the charity is a restricted one as distinguished from a purely public one, and the denial of exemption has usually been based upon the language of the particular statute as hereinbefore indicated. In *Philadelphia v. Masonic Home,* 160 Pa. 572 (28 Atl. 954, 23 L. R. A. 545, 40 Am. St. Rep. 736), wherein there was a denial of exemption, the following language is used: "The appellee clearly is a charity."

The final question presented for our determination has not been heretofore passed upon by us. *Lacy v. Davis,* 112 Iowa, 106, has little application to the case. That involved a construction of section 1304, which provides for the exemption from taxation of grounds and buildings "devoted solely" to the appropriate objects of such institu-

tion.    The authorities on this identical question are not numerous.    But the weight of authority, such as it is, is with the proposition that a lodge, such as the devisee in this case, is a charitable institution, but it is not purely or exclusively such, and is not a public charity.    As such charitable institution in the broader sense, exemption has been granted to it in other jurisdictions where the statute did not confine the exemption to purely public charities. *Plattsmouth Lodge v. Cass County,* 79 Neb. 463 (113 N. W. 167); *Savannah v. Solomon's Lodge,* 53 Ga. 93; *Massenburg v. Grand Lodge,* 81 Ga. 212 (7 S. E. 636); *Mayor v. Grand Lodge,* 60 Md. 282; *Indianapolis v. Grand Master,* 25 Ind. 518; *State v. Board,* 34 La. Ann. 574.    What we have here said as to the character of the lodge in question is based wholly on the evidence in this record.    The writer of this opinion is unhampered by independent knowledge on the question, and is happily dependent on the record for all facts relating to the subject.

The sum and substance of the evidence is that the money benefits dispensed by this defendant lodge are in no sense insurance benefits.    They are not benefits which have been previously paid for by the beneficiary and which may be demanded by him as a matter of right.    His only cause of action is a plea of distress.    His right is not weighed by previous payment, service, or desert.    The only measure of his right is the pressure of his need.    This is the domain and the function of charity as commonly understood.    Inasmuch as the Legislature did not see fit to restrict the term "charitable institutions," we would not be justified in placing such restriction upon it unless such restriction inheres in the legal meaning of the term, or unless such construction be necessary to harmonize this provision with other provisions of the statute, or to save its validity for constitutional or other reasons.    This provision as it is conflicts with no other.    It is neither inconsistent nor unreasonable.    We are constrained, therefore, to hold that the

defendant in its relation to this devise is a "charitable institution" within the meaning of this section. If this interpretation is not in accord with the legislative intent, it is better that such legislative intent be hereafter expressed by appropriate amendment than that we should assume to amend the statute by a strained construction.

It is needless to say that our holding herein does not have the effect of exempting the devised property from ordinary taxation. That question is controlled by section 1304 of the Code. Our consideration here is confined to the construction of section 1467.

The order of the trial court is *affirmed.*