Matter of the Estate of HENRY HITEMAN, Deceased.

(Surrogate's Court, Herkimer County, March, 1920.)

Transfer tax — bequest to a masonic lodge not subject to — charitable corporations — Tax Law, § 221.

A masonic lodge is both a charitable and benevolent corporation within the meaning of section 221 of the Tax Law, and a bequest of money thereto to be used in the erection of a temple for the lodge and the purchase of a site therefor, is not subject to a transfer tax.

APPEAL from an order exempting from taxation a legacy of $10,000.

James C. Bronner, for comptroller, appellant.

Myron M. Crandall, for executors and Winfield Lodge No. 581, Free and Accepted Masons, respondents.

Surrogate's Court, Herkimer County, March, 1920.     [Vol. 110.

BELL, S.   This is an appeal by the comptroller from an order made herein exempting from taxation the legacy of $10,000 under the will of said deceased to said lodge, "to be used   *   *   *   in the erection of a temple for said lodge and the purchase of a site therefor."

Winfield Lodge No. 581, Free and Accepted Masons, received its charter from the Grand Lodge, Free and Accepted Masons of the State of New York on June 12, 1866.

December 31, 1918, said grand lodge had jurisdiction over 872 lodges with a membership of 220,777.

The preamble to the constitution of the grand lodge provides:

"*The Masonic Teachings.*   Masonry teaches men to practice charity and benevolence   *   *   *,   to assist the feeble, guide the blind, raise up the down trodden, shelter the orphan,   *   *   *   support the Government, inculcate morality, promote learning, love man, fear God, implore His mercy and hope for happiness."

Section 55 of said constitution provides:

"Sec. 55.  No lodge shall distribute its funds among its members.  But a lodge may make such appropriation for voluntary relief of worthy and indigent Masons, their wives, child or children, widows or orphans, as may be proper."

Winfield lodge has 133 members.  It holds two communications or meetings each month, on the first and third Fridays, except during the hot weeks of summer. It annually elects its elective officers and the other officers are annually appointed by the master.  It has a set of by-laws for its own government and the conduct of its members.  Under article II of these by-laws an order of business is prescribed, and immediately following the reading of the minutes of the previous regular and special communications the second topic

under said order of business is entitled, "Sickness and Distress," under which head inquiry is made at regular communications for information as to sick or distressed masons and if any are known the lodge looks after them and contributes to their relief in such manner as appears to be necessary; and under article III of these by-laws a committee designated as a "Committee of Inquiry and Visitation" is provided for, whose duty it is to and does visit sick and distressed members and render immediate relief, or report such case to the lodge, which may vote such relief as it may deem proper. This committee is composed of the master and the two wardens.

The members pay initiation or affiliation fee, as the case may be, pay annual dues but no certificate of stock is issued, no member receives any dividend, revenue or benefit from the funds of the lodge, except by way of charity, no officer receives any compensation for his services except that the secretary and tiler are paid a small sum for their services.

If a member of the lodge is not sick and he or his family not in financial distress, he receives no financial aid or benefit from the lodge, but in all known cases of sickness or affliction of a member or his immediate family, or of any member of the order within the territory of the lodge, it is the purpose and practice of the lodge to and it does by committee visit such sick or afflicted member or members to ascertain if they are in need, and render such aid and comfort as may appear to be necessary and suitable to the occasion, and upon vote of the lodge all of its regular funds are subject to use for the relief of such sick or afflicted member, and in the event of his death, for his widow and orphans.

Winfield Lodge has at every opportunity and many

times paid from its treasury money to help and assist its worthy and distressed members, or their immediate families, and has provided food, clothing and necessaries, paid doctors' bills, nurses bills and hospital bills for its sick members or their immediate families, paid the burial expenses of deceased members, and maintained and supported their dependent widows and children, and all the moneys so paid and contributed have been a free gift, charity.

The lodge pays to the grand lodge annually *per capita* dues for each member of the lodge to defray the grand lodge expenses.  Also other sums which are turned over to the Trustees of the Masonic Hall and Asylum Fund (incorporated by chapter 272, Laws of 1864, as amended by chapter 666 of the Laws of 1898) for the maintenance and support of the Masonic Home at Utica, N. Y., and for the erection, equipment and maintenance of the new hospital now being erected at Utica, N. Y., in connection with said Masonic Home. This Masonic Home was erected over twenty-five years ago by the Free and Accepted Masons of the State of New York for the purpose of providing a home for indigent masons, their wives, widows and orphans, in accordance with the regulations of the Trustees of the Masonic Hall and Asylum Fund, and such persons receive board, clothing and medical attendance, as well as lodging, and the children therein are provided regular schooling and are taught useful trades and occupations.

Winfield Lodge has paid its proportionate share towards the maintenance of the said Masonic Home.

There are now 478 persons in said home, of which 195 are children, and during the existence of said home over 1,900 persons have been supported and cared for therein.  The annual expense of running this home is now $175,000.

Winfield Lodge owns no real property, rents the rooms in which it holds its meetings, and owns its furniture and equipment; the running expenses for rent, heating, lighting, secretary and tiler's compensation, are paid from the treasury and all its other moneys are used for benevolence and charity. The lodge is not engaged in any business or commercial enterprise, and its income is derived solely from membership dues, initiation and affiliation fees and whatever gifts it may receive.

If this lodge owned a temple or building where its meetings could be held the rent would be saved and then so much more would be devoted to benevolence and charity, all of which decedent knew when he made his will. He joined this lodge in May, 1882, and was treasurer continuously from January 1, 1891, to the time of his death. He knew of the benevolence done and charity given by the lodge and he desired to put the lodge in its own home so that it could be more benevolent and do more by way of charity.

It seems to me that Winfield Lodge No. 581, Free and Accepted Masons, is a corporation, both charitable and benevolent. Certificate was filed April 4, 1876, pursuant to the provisions of chapter 317 of the Laws of 1866. The wording and phrasing of this chapter indicate that it was thereby intended to create an act for the incorporation of masonic lodges and chapters.

Judge Hardin said, in *Iseman* v. *Myres,* 26 Hun, 651, 656, that: " The statute of 1866 [meaning chapter 317] was a dispensation in favor of the particular corporations named therein." This chapter and similar laws relating to other orders were substantially re-enacted into the Benevolent Orders Law, and hence the Benevolent Orders Law is deemed not a new law, but a continuation of the former law. Gen. Const. Law, § 95; *People ex rel. Donegan* v. *Dooling,* 141 App. Div.

Surrogate's Court, Herkimer County, March, 1920. [Vol. 110.

31. It seems to me and I think it is the general understanding among lawyers, where no certificate has been filed, that whenever any of the twenty-six different orders named in section 2 of the Benevolent Orders Law, files the certificate named therein, that such order then becomes a corporation.

Benevolence is any act of kindness or well doing; good done; charity given. Charity is a gift to promote the welfare of others, an institution for the help of the needy.

A devise in trust for the use of a lodge of Free and Accepted Masons is for charitable uses. *Cruse* v. *Axtell,* 50 Ind. 49.

A masonic lodge is a charitable institution within the meaning of the statute exempting from taxation any house belonging to a charitable institution. *City of Savannah* v. *Solomon's Lodge No. 1, F. & A. M.,* 53 Ga. 93.

A masonic lodge is entitled to exemption from taxation under a constitutional provision exempting charitable institutions because its primary objects are benevolence and universal charity. *State ex rel. Bertel* v. *Board of Assessors,* 34 La. Ann. 574.

A masonic lodge is an organization for charitable and benevolent purposes inasmuch as, with no incentive to private or corporate gain, its revenues, from whatever source they may be derived, are applied to pay current expenses and to relieve its afflicted and needy members and their families; and, although its charity is restricted to such use, is a charitable institution within the meaning of the Tax Exemption Law. *Fitterer* v. *Crawford,* 157 Mo. 51.

Fraternal societies such as lodges of Free Masons and other organizations with similar purposes are charitable societies within the meaning of a municipal ordinance exempting from the payment of city taxes

all and every religious and charitable society. *State ex rel. Hibernian Soc.* v. *Addison,* 2 S. C. 499.

It is not essential, to secure an exemption from taxation as a benevolent or charitable, educational or religious institution, that its benefits be made universal. *City of Petersburg* v. *Petersburg Benev. Mechanics' Assn.,* 78 Va. 431.

In *Morrow* v. *Smith,* 145 Iowa, 514, decedent devised to his local masonic lodge certain real estate of the value of $10,000 to " use the income of the same for charity," and the court held that the devise for charitable purposes to a masonic lodge, which was not organized for pecuniary profit but which devotes its funds, after paying the lodge expenses, to the relief of its needy members and their families, is not subject to an inheritance tax, where, by statute, property devised to charitable institutions is exempt.

This case is parallel with the one under consideration except that in the Iowa case no part of the funds of the lodge were used to maintain indigent masons at a Masonic Home.

A bequest to the trustees of the Masonic Hall and Asylum Fund, the income to be used for the education of the children who are inmates of the Masonic Home at Utica, is exempt from transfer tax. *Matter of Allen,* 76 Misc. Rep. 88.

Inheritance Taxation, by Gleason and Otis (2d ed. p. 242) under heading of " Bequests held exempt," names among others " To a Masonic Lodge."

I am of the opinion that this masonic lodge is both a charitable and benevolent corporation within the meaning of section 221 of the Tax Law, providing that any property devised or bequeathed to any charitable or benevolent corporation shall be exempt from the transfer tax.

Order affirmed.