In the Matter of the Estate of JAMES H. WATKINS, Deceased.

Surrogate's Court, Orange County, May, 1922.

**Wills — bequest to lodge of Odd Fellows — surviving widow — gift valid only to extent of one-half estate.**

Cornwall Lodge No. 340 I. O. O. F. of Cornwall-on-Hudson, duly incorporated under the laws of this state, is both a " benevolent " and a " charitable " corporation, within the meaning of those words as used in section 17 of the Decedent Estate Law.

Where, therefore, testator, who left him surviving his widow, devised and bequeathed all his property to said lodge, to be used toward the erection of an Odd Fellows' hall, the gift is valid only to the extent of one-half of the estate after payment of the testator's debts, if any.

PROCEEDING by widow to have testator's bequest to Cornwall Lodge No. 340 I. O. O. F. declared invalid as to one-half under section 17 of Decedent Estate Law.

*Henry W. Chadeayne,* for executor.

*Caleb H. Baumes,* for Cornwall Lodge No. 340 I. O. O. F.

*Henry Hunter,* for William A. Orr, a nephew of decedent.

*Thomas S. Doughty (Edgar G. Wandless,* of counsel), for Mary E. Watkins, widow.

TAYLOR, Special Surrogate. The testator, by his will, devised and bequeathed all his property to Cornwall Lodge No. 340 I. O. O. F. of Cornwall-on-Hudson, to be used toward the erection of an Odd Fellows' hall. He left a widow and by stipulation of the parties the decree admitting the will to probate determined that Mary E. Watkins " was the lawful wedded wife of James H. Watkins, and as such she is the sole surviving widow of said decedent."

Upon the return of the citation the widow appeared by counsel through whom she invoked the aid of section 17 of Decedent Estate Law which provides that " No person having a  *  *  * wife  *  *  *  shall, by his or her last will and testament, devise or bequeath to any *benevolent, charitable,* literary, scientific, religious or missionary society, association or corporation,  *  *  *  more than one-half part of his or her estate,  *  *  *," and such devise or bequest shall be valid only to the extent of one-half thereof.

It appears that decedent and his wife did not live together. The testimony does not disclose the cause of estrangement, but for the purpose of this discussion it matters little. The contestant comes within the purview of the statute, regardless of that question, because it is conceded she is testator's widow.

Surrogate's Court, Orange County, May, 1922.        [Vol. 118

It is contended that the Cornwall lodge is both a benevolent and a charitable corporation.

Cornwall lodge was incorporated under the laws of New York. The certificate is very brief. It was approved by a justice of the Supreme Court, and filed and recorded in the office of the secretary of state February 18, 1890. The certificate itself does not indicate under what particular law the lodge was formed; no proof on the subject was offered and the learned counsel for the lodge does not discuss it in his brief. It was formed prior to the Benevolent Orders Law. The widow contends it was formed under Laws of 1848, chapter 319, and in that I think she is correct. See annotations, McKinney's Decedent Estate Law under sections 18 and 19. If she is correct in that, it disposes of the question against the lodge, but I have chosen to discuss the subject from broader standpoints.

The certificate of incorporation states that " the object of this association to be for mutual benefit." The dispensation granted to the local lodge by the grand lodge of the state of New York recites that it was granted " for the encouragement and support of brothers of the said Order, when on travel or otherwise," and " to administer to true brothers all the privileges and benefits arising therefrom."

The grand lodge by-laws (Article X, section 6) provide that the funds and properties of a subordinate lodge are by the provisions of their respective charters and the laws of the order held only in trust for *charitable* and legitimate uses and purposes. Subordinate lodges may provide for a " widow and orphan fund " and an " education fund." Constitution of Subordinate Lodges, article IV, section 1. It is further provided (Id. section 9) that " The funds and property of this Lodge having been raised for the relief of sick and distressed members and other *charitable* uses in the order, are trust funds and shall not be divided among the members individually. Each subordinate lodge may set aside not to exceed ten per cent of its income " for any purpose tending to promote the interests and objects of Odd Fellowship." Id. section 12.

Under the heading of " meetings " the by-laws fix the time for regular meetings " to transact general business and to diffuse the principles of *benevolence* and *charity*." Article I, section 1. The by-laws further provide for a sick committee who are required to visit sick brothers at stated intervals and members of the lodge failing to report a sick brother are penalized. Article III, section 4; article VIII, section 5. Relief may be granted a member of another lodge, if found worthy. Article IV, section 6. The trustees constitute a committee to promote the welfare of widows

and orphans of deceased brothers in good standing at the time of the latter's death, and recommend such action as the committee deems proper. Id. section 8. The last by-law, entitled "Harmony," enjoins all members from such conduct as would interrupt or defeat "the most prominent objects of our Order, Friendship, *Charity* and Harmony," and that discussions be had in that spirit which "leads men to the altar of concord and good fellowship."

A tabulation of the income and disbursements of all subordinate lodges in New York state during the years of 1917 to 1920, inclusive, shows large sums paid for sick benefits to members, donations to other brotherhoods, relief of widowed families, education and relief of orphans, burial of wives of members, watching sick, special relief, support of Odd Fellows homes.

The 1921 annual report of the Cornwall lodge shows amounts paid for funeral benefits, sick benefits and assessments for Odd Fellows home.

Every lodge member, in good standing, may visit any other subordinate lodge wherever situate.

If a member is out of employment, other members, under a general obligation, are required to assist the unfortunate member in obtaining employment.

The good work this fraternity is doing is indicated by the fact that there is an Odd Fellows home for aged members, to be under the control of the grand lodge, in course of construction and there are at present four such homes supported by different groups of subordinate lodges. The whole scheme is being gradually brought under grand lodge jurisdiction.

In the Halifax and San Francisco disasters, and others, relief was extended to members of the order and their families in the affected districts.

One of the lodge degrees is based on the parable of the Good Samaritan in the Bible.

Excerpts from encyclopedias and from speeches of and books by men prominent in the order were put in evidence without objection. They are but opinions of the writers and speakers. The question is to be determined rather by the certificate of incorporation, the act under which incorporated, the constitutions and by-laws, and what has been or may be done thereunder. *Matter of White*, 118 App. Div. 869; *Matter of DePeyster*, 210 N. Y. 216; *New York Firemen Insurance Co.* v. *Ely*, 2 Cow. 678; *People ex rel. Bd. of Charities* v. *N. Y. Soc. P. C. C.*, 161 N. Y. 233, 239; *Jemison* v. *C. S. Bank*, 122 id. 135; *Matter of Rockefeller*, 177 App. Div. 786.

The fact that the bequest is for the purpose of erecting an Odd

Fellows hall and is not to be used directly in benevolent or charitable work is not controlling. The statute makes no such distinction.

This case seems to be one of first impression for, although the briefs show careful research, it is conceded there is no New York case in point, and it is doubtful if there is any in any other jurisdiction involving facts closely enough related to those in the instant case which might be used other than by analogy.

There are cases holding the buildings of certain lodges to be exempt from general taxation under section 4, subdivision 7, of the Tax Law, because organized for charitable or benevolent purposes, and others holding contrariwise where it appeared there was some little feature of money making (*Matter of Hiteman*, 110 Misc. Rep. 617; *Matter of Moses*, 60 id. 637; *Morrow* v. *Smith*, 145 Iowa, 514; *People ex rel. Delphian Lodge* v. *Cahoon*, 179 App. Div. 287; *Fitterer* v. *Crawford*, 157 Mo. 51), but in considering this class of cases we should keep in mind the rule that exemptions from general taxation, being in the nature of favors, are not favored and are to be strictly construed. *People ex rel. Andrews* v. *Cameron*, 140 App. Div. 76; affd., 200 N. Y. 585; *People ex rel. Syracuse M. Temple* v. *Ostrander*, 105 Misc. Rep. 405; *People ex rel. N. Y. Lodge No. 1* v. *Purdy*, 179 App. Div. 805; affd., 224 N. Y. 710; *People ex rel. Schenectady O. F. T. A.* v. *McMillan*, 199 App. Div. 268.

In considering statutes of other states, somewhat similar, and decisions thereunder, it should be noted that many such statutes refer to " public " charities, while our statute omits the word quoted. *Coe* v. *Washington Mills*, 149 Mass. 543.

On the other hand, section 17 of the Decedent Estate Law having been enacted for a humanitarian purpose — protection for a man's family — should have a liberal construction. It is a cardinal canon of statutory construction that the legislative intent should be found and effectuated, and the objects the lawmakers had in view, possible evils to be remedied and the motive which moved them to enact the law may be considered, and the courts have gone so far as to hold that such is the rule to be applied, even though the construction thus arrived at may be contrary to the literal meaning of some provisions of the statute. *Holmes* v. *Carley*, 31 N. Y. 289; *Hudson Iron Co.* v. *Alger*, 54 id. 173; *Mead* v. *Stratton*, 87 id. 493; *Bell* v. *Mayor, etc.*, 105 id. 139; *Weiler* v. *Newbach*, 47 Hun, 166; affd., 114 N. Y. 36; *People ex rel. Wood* v. *Lacombe*, 99 id. 43; *People ex rel. Gress* v. *Hilliard*, 85 App. Div. 507; affd., 176 N. Y. 604; *Topham* v. *Interurban Street R. Co.*, 96 App. Div. 323; *Hurst* v. *City of New York*, 55 id. 68; *Drew* v. *Village of White Plains*, 157 id. 394; *Troutman* v. *DeBoissiere O. F. Orphans H. & I. School Assn.*, 66 Kan. 1.

Misc. 645]        Surrogate's Court, Orange County, May, 1922.

*As to being a charitable association.*— It is contended that, legally, it is not charity where benevolence begins and ends at home and is largely a matter of contract. The sick and accident benefits, as provided for in the by-laws, do partake of an insurance nature. But assistance does not necessarily end there; indigent members or their families have been either paid money in addition to the " contract " sum or received other assistance, such as furnishing men to watch over the sick, for which the lodge has paid, assistance rendered in great catastrophes and the building and maintaining homes for the aged.

While each subordinate lodge may be a separate legal entity, all are more or less closely connected through the grand lodges of the states and the Sovereign Grand Lodge of the World. That their charity " begins and ends at home " really loses significance in face of the fact that there are a great number of lodges over practically the whole world having a very large membership. See *City of Indianapolis* v. *Grand Master of Grand Lodge of Indiana,* 25 Ind. 518; *City of Petersburg* v. *Petersburg Ben. Assn.,* 78 Va. 431; *Benevolent Society* v. *Kelly,* 28 Ore. 173.

In *Troutman* v. *DeBoissiere O. F. Orphans H. & I. School Assn., supra,* the gift was to trustees to provide a home for orphan children of deceased Odd Fellows of the state of Kansas. The Odd Fellows in this state contribute to a similar purpose, and the following quotation from the Kansas case is relevant: " In the case at bar ' the orphan children of deceased Odd Fellows of Kansas ' have neither become orphans nor the children of deceased Odd Fellows by their own voluntary act, but by the act of God over which, of necessity, they had no control. By their own volition they have not become separated from the great body of orphans. Hence, the limitation of the beneficiaries of this grant to the ' orphans of deceased Odd Fellows of Kansas ' has no more general effect in law in determining the character of the gift as a charity than would a limitation to laborers, to seamen, to blind children, to colored orphans, to orphans of a particular church, or to the orphans of soldiers, all of which, it is conceded, may be the expressed *cestui qui trustent* of a public charity."

It has been repeatedly held that gifts or donations to the poor of a certain locality, homes for aged women, homes for aged men, clothing poor children, to aid fugitive slaves, disabled firemen, or disabled sailors and soldiers, relief of distressed widows and the schooling and maintaining of poor children, to provide unmarried working women with homes and food at small cost, for the benefit of needy poor of a certain lodge, or for the benefit of traveling, supernumerary and worn out preachers are charitable, and in all

such cases the number or class to be benefited is restricted. *Brookville Borough* v. *Startzell*, 207 Penn. St. 347; *Klumpert* v. *Vrieland*, 142 Iowa, 434; *Matter of Nelson*, 81 Neb. 809; *Fellows* v. *Miner*, 119 Mass. 541; *Matter of Vassar*, 127 N. Y. 1; *Eccles* v. *Rhode Island Hospital Trust Co.*, 90 Conn. 592; *Jackson* v. *Phillips*, 14 Allen (Mass.), 539; *Potts* v. *Philadelphia Assn. for Relief of Disabled Firemen*, 8 Phila. (Penn.) 326; *Holmes* v. *Coates*, 159 Mass. 226; *Jones* v. *Habersham*, 107 U. S. 174; *Webster Apartments* v. *City of New York*, 118 Misc. Rep. 91; *Roberts* v. *Corson*, (N. H.) 107 Atl. Rep. 625; *M. E. Church, South*, v. *Hinton*, 92 Tenn. 188; *Matter of MacDowell*, 217 N. Y. 454.

*As to being a benevolent association.*— The lodge dismisses this phase of the case with the statement that " benevolent " and " charitable " are synonymous. In many cases that is true. In the statute here involved, however, no disjunctive or conjunctive is used between the two words. Sections of the Tax Law use both words similarly. § 4, subd. 7; § 221. I am of the opinion that " benevolent " and " charitable," as used in the Decedent Estate Law, are not synonymous.

The New Standard Dictionary defines " benevolence " and " benevolent " as follows: " Benevolence. The disposition to seek the well-being or comfort of others; desire to alleviate suffering or promote happiness; love to mankind; kindliness of heart.   *   *   * The disposition to promote the moral well-being of men and so increase their happiness; moral good will to all sentient beings.

" Benevolent. Kindly disposed toward others and actively desirous of their well-being; given to benevolence; kindly, generous."

It seems to me that from the outline of the objects of Odd Fellowship and what the fraternity has actually done, no other deduction is possible, except that the lodges come within these definitions.

" Charity," as we now use it, is much more limited in its meaning than " benevolent." This is explained in Fernald, English Synonyms, Antonyms and Prepositions at page 120 as follows: " According to the etymology and original usage beneficence is the doing well, benevolence the wishing or willing well to others   *   *   *. Charity, which originally meant the purest love for God and man is now almost universally applied to some form of almsgiving and is much more limited in meaning than benevolence." See, also, *Pell* v. *Mercer*, 14 R. I. 412, 443; *Mason* v. *Perry*, 22 id. 475; *Murdock* v. *Bridges*, 91 Me. 124; *Adye* v. *Smith*, 44 Conn. 60; *Norris* v. *Thomson's Executors*, 19 N. J. Eq. 307; *Matter of Moore*, 66 Misc. Rep. 116; *Matter of Loeb*, 167 App. Div. 588; *Matter of Cunningham*, 76 Misc. Rep. 120; 151 App. Div. 940; 206 N. Y. 601; *Matter of Altman*, 87 Misc. Rep. 255.

The Supreme Court of Massachusetts clearly brought out this distinction in *Chamberlain* v. *Stearns,* 111 Mass. 267, as follows: " The word ' benevolent,' of itself, without anything in the context to qualify or restrict its ordinary meaning, clearly includes not only purposes which are deemed charitable by a court of equity; but also any acts of kindness, or good-will or a disposition to do good, the objects of which have no relation to the promotion of education, learning or religion, the relief of the needy, the sick or the afflicted, the support of public works or the relief of public burdens, and cannot be deemed *charitable* in the technical and legal sense."

I, therefore, conclude that Cornwall Lodge No. 340 I. O. O. F. is both a benevolent and a charitable corporation, and that the bequest to it is valid only to the extent of one-half, after the payment of testator's debts, if any.

A decree may be entered accordingly.

Decreed accordingly.