THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK LODGE No. 1 OF THE BENEVOLENT AND PROTECTIVE ORDER OF ELKS, Respondent, *v.* LAWSON PURDY and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants. Taxes of 1914.

First Department, November 9, 1917.

**Tax — exemption statutes construed — exemption of building maintained by Benevolent and Protective Order of Elks.**

Statutes exempting property from general taxation are to be strictly construed as against the property owner. The legislative intention to exempt as applied to any particular state of facts must be clear and undoubted.

Where a lodge of the Benevolent and Protective Order of Elks erected and maintains a building of several stories, containing lodge rooms but used as a general club house for members of the order, and in an endeavor to

806     People ex rel. N. Y. Lodge No. 1 *v.* Purdy.

First Department, November, 1917.          [Vol. 179.

obtain exemption from taxation under subdivision 7 of section 4 of the Tax Law executed a lease of said property excepting the lodge floor to three members of the order upon no fixed rental, but merely to manage the property and pay all expenses including interest upon outstanding mortgages in the amount of $850,000, and further providing that " the rental for said premises   *   *   *   shall be the balance of the net income " of the property, and said " rental " amounted at the end of the first year to $3,270.92 and was then applied to certain charitable and benevolent institutions of the order, said lodge is not entitled to have the building exempted from taxation, because it is not such a building as is contemplated by the statute, and further, because the " entire net income " was not " exclusively applied " to charitable or educational purposes enumerated in the statute.

The net income contemplated by the statute does not authorize the charging off of the expenses incurred for club and hotel purposes as was done in this case.

A social club cannot be made in effect a charitable institution by providing that a small net income shall be applied to charity.

Appeal by the defendants, Lawson Purdy and others, as commissioners of taxes and assessments, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of May, 1915, vacating, with costs, a certain assessment of $500,000 for the year 1914, made by the defendants against the property of the relator in the borough of Manhattan.

*William H. King*, for the appellants.

*Maurice Deiches*, for the respondent.

Smith, J.:

The relator claims exemption of the Elks' Building in West Forty-third street, under section 4, subdivision 7, of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62). This section, after exempting the property of corporations or associations organized *exclusively* for purposes religious, charitable, etc., also exempts from taxation " the real property of any fraternal corporation, association or body created to build and maintain a building or buildings for its meeting or meetings of the general assembly of its members, or subordinate bodies of such fraternity and for the accommodation of other fraternal bodies or associations, the entire net income of which real prop-

erty is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows or orphans." (See, also, Tax Law [Gen. Laws, chap. 24; Laws of 1896, chap. 908], § 4, subd. 7, as amd. by Laws of 1903, chap. 204; Laws of 1906, chap. 336, and Laws of 1907, chap. 693.)

It is admitted that the relator was not organized exclusively for any religious or charitable purpose, so that its claim for exemption rests upon that part of the statute quoted. The relator was originally incorporated in 1896 under the Membership Corporations Law (Gen. Laws, chap. 43 [Laws of 1895, chap. 559], as amd.; now Consol. Laws, chap. 35 [Laws of 1909, chap. 40], as amd.). The relator's certificate of incorporation then provided: " *First.* That the particular objects for which said Corporation is formed are as follows, · viz.: To protect and aid its members and their families and to accumulate a fund for that purpose, to promote and encourage friendship and social intercourse among its members, and in a general sense to carry out the objects and purpose of the Benevolent and Protective Order of Elks." In July, 1904, apparently in order to come within the above quoted statute, the relator obtained a " certificate of extension of purposes," as follows: " To buy and maintain, or build and maintain, a building or buildings for its meeting, or meetings of the general assembly of its members, or subordinate bodies of the Elk Fraternity, and for the accommodation of other fraternal bodies or associations, the entire net income of which real property is to be exclusively applied, or to be used to build, furnish and maintain an asylum or asylums, a home or homes, for the relief of members of the Elk Fraternity or for the relief, support and care of worthy and indigent members of the Elk Fraternity, their wives, widows or orphans." In February, 1913, relator obtained a " certificate amending corporate purposes," as follows: " To purchase the necessary land and build and maintain in the Borough of Manhattan, City of New York, a building for the use of its members, and members of other bodies of the Benevolent and Protective

First Department, November, 1917.          [Vol. 179.

Order of Elks, exclusively. To promote charity, maintain a hospital, provide a cemetery, practice benevolence, inspire patriotism, and for the general mental and moral improvement of its members, and to accumulate funds for the said purposes, which said funds shall be used and appropriated for no other purposes whatsoever."

The following facts respecting this building, which was opened in 1911, are conceded: The basement contains a grill room, bar, bowling alleys, barber shop, and a large kitchen; the main floor contains a large dining room, a licensed bar, ladies' parlors, writing room, lounging room, foyer and toilets, coatroom, office, telephone and main entrance. There is a mezzanine floor or gallery surrounding the entire dining room, used as a restaurant and promenade and also for executive offices. The third floor is given over to clubrooms, billiard and poolrooms, meeting rooms, barroom and café. The fourth, fifth and sixth floors, being three floors combined in one, are known as the grand lodge room and used for meetings of the general assembly of the order. The seventh to twelfth floors consist of 216 sleeping rooms, some with baths, which are rented as lodgings to members of the order with others, and there is a solarium on the half-story above, which is in use part of the year. In the sub-basement there are three boilers and two dynamos. There is also an ice plant having a daily capacity of twenty-five tons. The building is provided with four standard elevators.

It further appears that the relator, in its evident endeavor to obtain exemption from taxation under this statute quoted, executed in September, 1913, a so-called lease or agreement, by which it in form leased its entire property, excepting the third or lodge floor, to three members of the order upon no fixed rental, but merely to manage the property and pay all expenses connected therewith, including interest upon outstanding mortgages in the amount of $850,000. " The rental for said premises * * * shall be the balance of the net income " of the property. This " rental," being the " balance of the net income," amounted at the end of the first year to $3,270.92, and was then applied to certain charitable and benevolent institutions of the order.

It is evident that statutes exempting property from general

taxation are to be strictly construed as against the property owner. The legislative intention to exempt as applied to any particular state of facts must be clear and undoubted. Judged by this rule, it would seem that the relator has failed to bring itself within the clause of the statute quoted. The purpose of building and maintaining a building " for the use of its members, and members of other bodies of the Benevolent and Protective Order of Elks, exclusively," is evidently not the same as the more limited purpose provided for by the statute, where the use of the building is limited to the " meeting or meetings of the general assembly of its members, or subordinate bodies of such fraternity and for the accommodation of other fraternal bodies or associations." The statute seems to contemplate a building distinctly for society or lodge purposes, as opposed to a general club house for members of the order.

But even if the use or purpose of the building in question could be held to conform to the purposes mentioned in the statute, the relator to succeed must further establish that the " entire net income " of this property was " exclusively applied " to the charitable or educational purposes enumerated in the statute, and this we think it has failed to do. Whatever may be the ordinary usage of the term " net income," it is clear that the construction contended for by the relator could not have been in the minds of the framers of the statute, since such a construction practically nullifies its evident purpose. If as a matter of law taxes could be avoided on property of an assessed valuation of $800,000 and carrying mortgages of $850,000 by the payment to charity of $3,270.92 annually, there is no reason why, by a slight reduction of the house charges, this so-called net income could not be reduced almost to the vanishing point, and yet the claim still be made of compliance with the statute so long as a dollar remained for charity each year. By this means a valuable property such as relator's building, concededly used very largely for merely club and social purposes, would escape the taxation to which individuals and clubs in general are liable. Certainly the net income as contemplated by the statute did not authorize the charging off of the expenses incurred for club and hotel purposes, as was done by the relator in the case at bar. (*Boston*

*Lodge Order of Elks* v. *Boston*, 217 Mass. 176, 178; *St. Louis Lodge No. 9, B. P. O. E.* v. *Koeln*, 262 Mo. 444; *Green Bay Lodge No. 259, B. P. O. E.* v. *Green Bay*, 122 Wis. 452.)

It follows that in our judgment this property, upon both grounds mentioned, is not within either the letter or the spirit of the exemption clause of the statute. We think that a social club cannot be made in effect a charitable institution by providing that a small net income shall annually be applied to charity.

The order appealed from should be reversed, with ten dollars costs and disbursements, and an order entered dismissing the writ and affirming the assessment upon relator's property, with costs. The finding that the entire net income of relator's property was applied to the purposes specified in the statute is reversed.

SCOTT, LAUGHLIN, PAGE and DAVIS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and writ dismissed, with costs, and assessment confirmed.