THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SCHENECTADY ODD FELLOWS TEMPLE ASSOCIATION, Appellant, *v.* WILLIAM F. McMILLAN and Others, Composing the Board of Assessors of the City of Schenectady, N. Y., Respondents.

Third Department, December 28, 1921.

Taxation — assessment — exemption from taxation — certiorari to review assessment of real property of fraternal corporation organized under Benevolent Orders Law, § 7 — Tax Law, § 4, subd. 7, authorizing exemption strictly construed against property owner — only real property exempt is that used for fraternal purposes — statute does not apply where building used commercially — net income from property must be used for purposes specified in statute or property is not exempt.

Under the rule that statutes exempting property from general taxation must be strictly construed against the property owner and that exemption may not be presumed if it is not plainly expressed, the real property of a fraternal corporation organized under section 7 of the Benevolent Orders Law is not exempt from taxation by virtue of section 4, subdivision 7, of the Tax Law, where the building claimed to be exempt is devoted to and used for many different purposes, some of which are commercial, for the Tax Law contemplates a building to be used for lodge purposes, with an occasional use, perhaps, for other fraternal purposes.

Accordingly, the relator's building which was used not only for the fraternal purposes of the relator, but which contained bowling alleys and pool tables open to the public, and which was rented to other organizations not connected with the relator, was not exempt from taxation.

Furthermore, even if the statutes and by-laws and the use of the property do not prevent exemption, still the property is not exempt, unless it appears that the entire net income therefrom was and is exclusively applied or to be used for the purposes enumerated in the statute, and since the relator has not used its net income for said purposes, its building cannot be exempted from taxation.

While the by-laws of the relator direct the use of all surplus moneys for certain benevolent purposes, which are within the contemplation of the statute exempting property of fraternal organizations from taxation, it also specifies " such other benevolent or charitable purposes as the board may direct," which permits the board to direct the use of the surplus for benevolent or charitable purposes not contemplated by the statute, and this is another ground why the relator's property is not exempt from taxation.

APPEAL by the relator, The Schenectady Odd Fellows Temple Association, from a judgment of the Supreme Court

in favor of the defendants, entered in the office of the clerk of the county of Schenectady on or about the 5th day of August, 1921, upon the decision of the court rendered after a trial at the Schenectady Special Term, dismissing a writ of certiorari.

*Walter Briggs* and *Charles G. Fryer*, for the appellant.

*George B. Smith*, for the respondents.

Judgment unanimously affirmed, with costs, on the opinion of WHITMYER, J., at Special Term.

The following is the opinion delivered at Special Term:

WHITMYER, J.:

This is a proceeding to review the 1920 assessment of $20,000 upon relator's real property, at the corner of Hawk and State streets, Schenectady, N. Y., solely upon the claim that the property is not assessable, under section 4, subdivision 7, of the Tax Law.* This section first exempts the real property of a corporation or association organized exclusively for religious, bible, tract, charitable, benevolent and other purposes and then exempts " the real property of any fraternal corporation, association or body created to build and maintain a building or buildings for its meeting or meetings of the general assembly of its members, or subordinate bodies of such fraternity and for the accommodation of other fraternal bodies or associations, the entire net income of which real property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows or orphans." The claim here is based upon the portion of the section which has been quoted. Relator is a joint corporation, formed in 1912, under section 7 of the Benevolent Orders Law,† which provides, so far as material, that " any lodges, * * * within the State chartered by the Grand Lodge of the Independent Order of Odd Fellows, * * * and any number of subordinate lodges, tribes or other bodies of any

---

*Amd. by Laws of 1918, chap. 288.— [REP.

†Amd. by Laws of 1910, chap. 145; since amd. by Laws of 1917, chap. 351.— [REP.

benevolent or fraternal order or society incorporated under and pursuant to the laws of this State, may unite in forming a corporation for the purpose of acquiring, constructing, maintaining and managing a hall, temple or other building, * * *." Mohawk Valley Lodge No. 12 and Champion Lodge No. 554 of the order, each a subordinate lodge duly chartered by the grand lodge, united in the formation. Section 3 of article 1 of the by-laws states the purpose. It reads as follows: " The purpose of the association shall be to purchase building, constructing, maintaining and managing building or hall for lodge purposes." Section 6 of said article prescribes how the moneys from rentals shall be used, as follows: " All moneys derived from rentals of said building or hall to be used for defraying cost and expenses of same and all surplus moneys derived from said building or hall to be used for benevolent purposes, namely, Odd Fellows Homes, Homes for Aged and Invalid Odd Fellows, Aged Odd Fellows and Widows of Odd Fellows, Homes for Orphans of Odd Fellows and such other benevolent or charitable purposes as the Board may direct." Mohawk Valley Lodge bought the lot and conveyed it to the association. The cost was $7,000. The association built the building, a two-story brick building, with basement. The heating plant, three bowling alleys and one pool table are in the basement, the assembly room is on the first floor and the lodge rooms are on the second floor. The cost of building was $24,000. It was financed by a mortgage for $18,000, balance by notes at six per cent, held mostly by the forming lodges. Now, the mortgage is $4,000 and the notes amount to about $24,000. And the said lodges seem to hold about one-half in amount. The bowling alleys and pool table are public and the revenues from same go to the janitor in lieu of pay. The revenue tax on same is paid by the association and, if the use of the basement for election or other purposes prevents the letting of the alleys and table, then the association is required to pay the janitor about $5 per day. The revenue tax for 1919 was $50. The assembly room has been let to other organizations, not connected with the Odd Fellows, when not in use by the lodges. The lodge rooms have been occupied by Champion and Mohawk Valley Lodges, and also by Dorpian Encampment and the Rebekahs,

People ex rel. Schenectady O. F. T. A. *v.* McMillan.   271

App. Div. 268]        Third Department, December, 1921.

affiliated bodies, and they have paid rent.   The total receipts from rentals were $3,234.85 for 1918, and $4,033.22 for 1919. Of these amounts, the lodges paid $1,039 in 1918 and $986.50 in 1919.   The balance, namely, $2,195.85 for 1918 and $3,046.72 for 1919, come from sources not connected with Odd Fellowship and consisted of rentals from different associations, such as Bible Students, Commercial Travelers, Masons, Gospel Mission, G. A. R. Ladies, Jewish Society, Civic Club, Old Maids' Convention, Orangemen, Lamb's Club, Maqua Company, Triple Alliance and, especially, rentals from dancing.   The total charge for expenses for 1918 was $3,534.50. The deficit claimed for that year was $299.65.   The total charge for expenses for 1919 was $3,696.52.   The income shown for that year was $336.70.   The treasurer testified that there had been a deficit each year since organization, and that it had been carried forward each year, but it seems that he is mistaken, because the figures above, based upon his evidence, are exclusive of deficits.   The total charges for maintenance and repairs amounted to $2,289.10 for 1918 and to $1,894.08 for 1919.   The amounts seem large.   Examining them, we find, for 1918, items of $150, part payment and exchange of piano, and $50 redemption of notes, and for 1919, $375 for electric fans, besides other items for merchandise of various kinds each year.   Without these, the 1918 account would have shown a net income and the 1919 account a larger net income.   The receipts and disbursements for 1920 were along the same lines.

Now, it is well settled that statutes exempting property from general taxation must be strictly construed against the property owner and that exemption may not be presumed, if it is not plainly expressed.   (*People ex rel. Young Men's Assn.* v. *Sayles,* 32 App. Div. 197, 201; affd., 157 N. Y. 677.) Under this rule, which must be applied here, it seems clear that the section of the Benevolent Orders Law, under which relator was incorporated, and the section of the Tax Law, under which it claims exemption, contemplate a building to be used for lodge purposes, with an occasional use, perhaps, for other fraternal purposes, and not a building devoted to and used for the many and different purposes here shown. (*People ex rel. New York Lodge No. 1* v. *Purdy,* 179 App. Div.

805, 809; affd., 224 N. Y. 710; *People ex rel. Mizpah Lodge* v. *Burke,* 228 id. 245.) And relator's by-laws specify lodge purposes only. But, even if the statutes and by-laws and the use of the property do not prevent exemption, still the property is not exempt, unless it appears that the entire net income therefrom was and is exclusively applied or to be used for the purposes enumerated in the statute. (*People ex rel. New York Lodge No. 1* v. *Purdy, supra.*) And it has not been so applied, notwithstanding that a net income was shown for 1919, and that one actually existed for 1918, the two years concerning which evidence was given. Relator has not construed the words "surplus moneys," as used in its by-laws, in the sense that the words "entire net income" are used in the statute. Finally, it should be noted that, while section 6 of the by-laws directs the use of all surplus moneys for certain benevolent purposes, which are within the contemplation of the statute, it also specifies "such other benevolent or charitable purposes as the board may direct." This permits the board to direct the use of the surplus for benevolent or charitable purposes not contemplated. For these reasons, it becomes necessary to dismiss the writ.