**406**  Young Women's Christian Assn. *v.* City of New York.

First Department, June, 1926.                                    [Vol. 217

Young Women's Christian Association of the City of New York, Respondent, *v.* The City of New York, Appellant.

First Department, June 4, 1926.

**Taxation — exemption — action by Young Women's Christian Association to cancel real property taxes as cloud on title — part of plaintiff's building was used for restaurant, was open to public and was run at profit — building was not entirely exempt under Tax Law, § 4, subd. 7, on ground it was used exclusively for charitable purposes — assessors had jurisdiction — assessment not illegal and void — plaintiff may have been entitled to partial exemption — remedy is by certiorari.**

The plaintiff, a Young Women's Christian Association, is not entitled to have canceled, as a cloud on title, the taxes for the years 1921–1923 based upon assessments made for those years on real property consisting of a building, on the theory that the assessment was illegal and void because the building was exempt from taxation under subdivision 7 of section 4 of the Tax Law, since it appears that a part of the building was used for a restaurant, which was open to the public and which was run at a profit, and, therefore, the entire building was not used exclusively for charitable, benevolent or educational purposes or any one of such purposes.

The fact that the profit made from the restaurant may have been used for the purposes of the corporation does not change the rule.

The plaintiff may have been entitled to a partial exemption from taxation to the extent of the value of the portion of the building used exclusively for charitable, benevolent or educational purposes, but it was not entirely exempt, and, therefore, the assessors had jurisdiction of the subject-matter, and in making the assessment they acted judicially.

If the plaintiff was entitled to partial exemption its remedy was by certiorari to correct the error in overvaluation.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of December, 1925, upon the decision of the court rendered after a trial at the New York Special Term.

*William H. King* of counsel [*Isaac Phillips* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the appellant.

*Richard Ely* of counsel, for the respondent.

*George F. Kenna* of counsel [*Seth T. Cole* with him on the brief], for the State Tax Commission as *amicus curiœ.*

WAGNER, J. This action was instituted to cancel, as a cloud on title, the taxes for the years 1921, 1922 and 1923, based upon assessments made for those years on real property of the plaintiff, on the ground that the property in question was exempt from taxation under subdivision 7 of section 4 of the Tax Law.

Plaintiff is a corporation organized under special act of the Legislature in 1873 (Chap. 319) and amendments thereto, and its purpose as stated in chapter 265 of the Laws of 1911 is as follows: " The object of this corporation shall be the improvement of the physical, social, intellectual, moral and spiritual condition of the young women of the city of New York, by procuring employment and safe boarding places, by Bible classes, social and religious meetings, libraries and reading rooms and educational advantages, and such other means and services as may conduce to the accomplishment of this object."

The premises in question with the building and improvements thereon was acquired by the plaintiff in 1920, and is known as " Laura Spelman Hall." It is situated at the southwest corner of Hudson street and West Twelfth street and has a depth of approximately 147 feet to the easterly side of Greenwich street.

The land is improved with a building seven stories in height above the basement, and during the period involved in this litigation the premises were used by the plaintiff as a residence or lodging house for self-supporting girls under thirty years of age whose compensation did not exceed thirty dollars a week.

The building accommodates about 206 permanent women residents and about 35 transient guests, many of whom come to Spelman Hall through the recommendation of the Travelers Aid Society or other benevolent agencies.

The first floor contains a lobby, an office of the managing director and other executive offices, a recreation room, certain small parlors, reading rooms and a cafeteria. The floor space of this cafeteria is about sixty-six feet by fifty-nine feet and four inches. Employed in operating the cafeteria is a manager and about twenty-two additional employees.

On the street level affixed to the building are two display signs advertising the fact that the cafeteria is open to the public both for men and women.

In this cafeteria 2,624 meals a week are served; of these, 1,480 are served each week to the public for cash. Approximately fifty-six per cent of the meals were served to the public for cash, and of the public customers approximately eighty-seven per cent were men. In other words, more than half the entire patronage of the restaurant was secured from the public to whom meals were so sold, not at cost, but at a profit.

The plaintiff contends that the premises in question during the years 1921, 1922 and 1923, the period in question, were used exclusively for religious, educational, charitable and benevolent purposes and complains that the taxes assessed against the premises for

those three years are illegal and void, remain wholly unpaid and constitute a cloud on title, and prays for a judgment that said taxes be adjudged void and canceled of record.

The defendant in its answer denies that the premises have been and still are used exclusively for religious, educational, charitable and benevolent purposes; and contends that the assessments are valid and constitute no cloud on title.

The court at Special Term sustained the plaintiff's contention and granted judgment as prayed for, from which the city now appeals.

The plaintiff bases its claim for exemption from taxation upon subdivision 7 of section 4 of the Tax Law (as amd. by Laws of 1918, chap. 288, and Laws of 1921, chap. 446; since re-enacted and amd. by Laws of 1924, chap. 489), which, so far as material, provides: " The real property of a corporation * * * organized exclusively *for* * * * charitable, benevolent, * * * educational * * * purposes, or for the enforcement of laws relating to children * * *, or for two or more such purposes, and *used exclusively* for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation. * * * The real property of any such corporation or association entitled to such exemption held by it *exclusively* for one or more of such purposes and from which no *rents, profits* or income are derived, shall be so exempt. * * * The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or *building* of any such corporation or association *is used exclusively* for carrying out thereupon one or more such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the *remaining or other portion,* to the extent of the value of such remaining or other portion, *shall be subject to taxation; * * *.*" (Italics of the court.)

The rule of construction in construing an act exempting property from taxation is so well established as scarcely to need the citation of authorities. It is familiar law that statutes exempting property from taxation are to be strictly construed and that the intention of the Legislature to grant immunity must be clear beyond a reasonable doubt, the rule being that the right of taxation exists unless the exemption is expressed in clear and unambiguous terms, and that no claim of exemption can be sustained unless within the express letter or the necessary scope of the exemption clause.

This rule is based on the ground that exemptions from taxation

are in derogation of the sovereign authority of the State and, therefore, should not be extended beyond the exact and express requirements of the exemption grant which must be construed *strictissimi juris.* (*People ex rel. Mizpah Lodge* v. *Burke,* 228 N. Y. 245; *People ex rel. N. Y. Lodge No. 1* v. *Purdy,* 179 App. Div. 805; affd., 224 N. Y. 710; *People ex rel. Andrews* v. *Cameron,* 140 App. Div. 76; affd., 200 N. Y. 585; *Matter of Francis,* 121 App. Div. 129; affd., on opinion below, 189 N. Y. 554; *People ex rel. Schenectady Odd Fellows Temple Association* v. *McMillan,* 117 Misc. 600; affd., on opinion below, 199 App. Div. 268; *People ex rel. D. K. E. Society* v. *Lawler,* 74 id. 553.)

The statutory test to determine an exemption is whether the property is used exclusively for carrying out thereupon one or more of the purposes of the incorporation of the plaintiff.

In the first place the property claimed to be exempt must be used. If it is idle or unused it is not entitled to exemption under the statute. (*People ex rel. Blackburn* v. *Barton,* 63 App. Div. 581; *People ex rel. Missionary Sisters* v. *Reilly,* 85 id. 71; affd., 178 N. Y. 609.)

Nor does the fact that it was *principally* used for the purposes of the incorporation of the one claiming exemption satisfy the statute. (*People ex rel. Adelphi College* v. *Wells,* 97 App. Div. 312; affd., 180 N. Y. 534.) There seem to be certain specific exceptions prescribed by the statute to these general rules, but such exceptions are not material to this case.

Here portions of the premises were used as a restaurant and a kitchen for the purpose of furnishing meals, not solely to the occupants of the building, but also to the public. The patronage of the public was openly and evidently successfully solicited, and it resulted in more than fifty per cent of the restaurant service which was paid for in cash and on which a profit was made or attempted to be made. The profits were not used directly for the benefit of the " young women," whose advancement was the object specified in the charter of the plaintiff corporation. That the money so obtained was subsequently used for accomplishing the corporate purposes, does not bring the plaintiff corporation within the exemption of the statute. (*People ex rel. Young Men's Assn.* v. *Sayles,* 32 App. Div. 197; affd., 157 N. Y. 677.)

The patronage of the restaurant in the plaintiff's premises was not merely occasional, sporadic or an emergency use, but it was the daily practice. Nor can it be considered merely an incidental use for the purposes defined in the plaintiff's charter. It was a practice conducted by the plaintiff corporation for the purpose of securing revenue, undoubtedly for the laudable purpose of sub-

First Department, June, 1926.                    [Vol. 217

sequent use by the corporation in accomplishing their very praise-worthy aims and purposes.   Nevertheless, the making of profit by conducting a restaurant for the public is clearly not within the corporate purposes of the plaintiff's charter.

As stated in *People ex rel. Young Men's Assn.* v. *Sayles* (*supra*, 202; affd., without opinion, 157 N. Y. 677): " Undoubtedly the Legislature, not lacking generous sympathy with the charitable institutions of the State, felt that it was necessary to guard against abuses, and that charity itself would be the better fostered if it were not tempted to undertake other enterprises in the hope, often delusive, of expanding the charity." (Citing *People ex rel. Catholic Union* v. *Sayles*, 32 App. Div. 203.)

It is our view that under the circumstances disclosed in this record the plaintiff corporation during the years in question, namely, 1921, 1922 and 1923, was entitled at most to a partial exemption of the premises in question from taxation; that is, to the extent of the value of the portion of the plaintiff's building used exclusively by the boarders and that the remaining or other portion for which income was derived from the public and which was used for the cafeteria or restaurant, kitchen and store room, was subject to taxation to the extent of the value of such remaining portion in accordance with the provisions of subdivision 7 of section 4 of the Tax Law.

The taxing officers accordingly had jurisdiction over the subject-matter and in making the assessment they acted judicially.   (*U. S. Trust Co.* v. *Mayor*, 144 N. Y. 488, 492, 493.)

The plaintiff here charges and claims that the assessment for taxes was illegal and void.

The tax assessors having jurisdiction, the assessment was not illegal.   There probably was an overvaluation by the improper inclusion of exempt property.   This at most was an error in valuation and not a lack of power to assess the premises as a whole. (*National Bank of Chemung* v. *City of Elmira*, 53 N. Y. 49, 58; *People ex rel. Soeurbee, Inc.*, v. *Purdy*, 179 App. Div. 748; affd., 222 N. Y. 657.)

Accordingly the assessment here complained of cannot be attacked as illegal because of error in overvaluation.   The only relief to the taxpayer is by certiorari proceedings as prescribed by the statute. (See Greater New York Charter [Laws of 1901, chap. 466], § 906, as amd. by Laws of 1911, chap. 455; Tax Law, § 290 *et seq.*, as amd. by Laws of 1916, chap. 323, and Laws of 1920, chaps. 643, 649.   See, also, Civ. Prac. Act, § 1283 *et seq.; People ex rel. Empire Mortgage Co.* v. *Cantor*, 198 App. Div. 317.)

It is our opinion that the tax assessments complained of were

not illegal and not a cloud upon title to plaintiff's premises, and that the judgment appealed from should be reversed, with costs, and the complaint dismissed upon the merits, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.