In the Matter of the Application of PEACE HAVEN, THE HOUSE OF THE NEW COMMANDMENT, R. F. M. M. RETREAT, INC., Petitioner, for a Writ of Certiorari to FRANK H. GEIGER, Assessor of the Town of Islip, Suffolk County, New York, Respondent.

Supreme Court, Kings County, January 9, 1941.

*Kramer & Mayer*, for the petitioner.

*John M. Greene*, for the respondent.

LOCKWOOD, J.   The assessor of the town of Islip, Suffolk county, the respondent herein, moves for judgment pursuant to section 476 of the Civil Practice Act, in a proceeding brought by writ of certiorari to establish the exemption from taxation of petitioner's real property, upon the ground it is used exclusively for religious, charitable, benevolent, scientific, literary and educational purposes.

The property (located at Oakdale in the town of Islip, Suffolk county), covering about fifty and one-half acres of lawns and wooded tracts, improved with a 110-room mansion house and stables, swimming pool and outbuildings, now called Peace Haven or Shangri-La, was for many years the country residence of the late William K. Vanderbilt and known as Idle Hour.

The present owner is a corporation duly formed under the Membership Corporations Law, entitled " Peace Haven, The House of the New Commandment, R. F. M. M. Retreat, Inc." R. F. M. M. is the abbreviation for " Royal Fraternity Master Metaphysicians."

Respondent claims that the owning corporation, by its admissions in the record, has shown that it is not organized exclusively for the various purposes mentioned in subdivision 6 of section 4 of the Tax Law, and it is not, therefore, entitled to exemption.

Petitioner contends that it is entitled to a hearing at which the issues of fact may be determined by a court or referee.

No issues of fact are raised on this motion. If the undisputed facts and the admissions of petitioner contained in the record show that petitioner is not in good faith organized exclusively for the moral and mental improvement of men and women or for religious, Bible, charitable, benevolent, educational or scientific purposes, the respondent is entitled to judgment dismissing the writ as a matter of law.

It appears from the testimony of the president that Peace Haven was formed and maintains the property here involved to provide a retreat for those interested in the study of metaphysics — for the study and development of the spiritual technique necessary for the operation of the principle known as truth or metaphysics — to prepare and train followers for teaching and lecturing, also to afford a retreat where metaphysicians requiring the healing power of metaphysical care and assistance to overcome some mental, physical or other problem may be assisted by those who more fully understand the spiritual law of truth.

Funk & Wagnall's Standard Dictionary defines metaphysics as:

" 1. The systematic study or science of the first principles of being and of knowledge; the reasoned doctrine of the essential nature and fundamental relation of all that is real.

" 2. Speculative philosophy in the looser and wider sense.

" 3. Specific:— the principles of philosophy as applied to the principles and methods of any particular science; as the metaphysics of geometry — the metaphysics of theology.

" 4. Mental science in general; psychology; especially in the Scottish School.

" 5. Indefinitely abstruse, confused and bewildering discussions; a popular use suggested by the character of many works in philosophy.

" 6. Archaic:— the science of supernatural or magical beings and agencies."

Metaphysics has been judicially defined as the science of being; the science which deals with ultimate reality; the philosophy of mind; the science beyond experience; the realm of transcendental ruminations and of speculation of the philosopher. (*Vineland Trust Co.* v. *Westendorf*, 86 N. J. Eq. 343; 98 A. 314.)

Petitioner's president and general manager, James B. Schafer, would not state the number of members but testified that new members were expected, but not required, to make a $100 " love gift " and to pay two dollars monthly dues. In addition, that members were not required to, but did, pay two dollars daily for food and lodging while at Peace Haven.

He further testified that neither he nor any other member received any salary or income from the corporation, except the members who did physical work, and that operating deficits were made up from loans or donations from members; that such loans or contributions have ranged in amount from $1 to $30,000.

He testified that he had no income, stocks, life insurance, royalties, business or profession other than president and manager of petitioner, and could not state what his previous income was, although he said he is a substantial contributor to the organization; that he received no salary or fees whatever, but received personal gifts of money in the mail from all over the world in return for helping people out, which he characterizes as " love gifts."

The record discloses that the quarters at Peace Haven are somewhat luxurious; that various athletic and recreational equipment and facilities are provided, including boats and canoes on the river, bicycles, saddle horses, tennis, squash, ping-pong and swimming. A fully equipped restaurant is maintained, serving meals *a la carte* and also regular breakfasts, luncheons and dinners. In fact, Peace Haven presents the aspects of any ordinary country club, except that the members of the former are said to profess a common interest in metaphysics.

It appears from the hearing of September 17, 1940, that Peace Haven had the custody of a baby named Jean Gaunt which Mr. Schafer proposed to adopt and rear for immortality. He testified it was their purpose to prove their contentions that " it is possible to be immortal if you have enough effort to be it."

The petitioner was formed under the Membership Corporations Law, not the Religious Corporations Law. It has no tenets, ritual, dogma or other characteristics of a religious organization except, possibly, the solicitation and receipt of funds.

Petitioner has not been granted a charter by the Board of Regents under the provisions of the Education Law, and has not obtained the consent of the Commissioner of Education to the filing of its certificates. (Membership Corp. Law, § 11.)

Its president testified that the organization during two and one-half years spent $29,000 for gifts, housing and board for the poor; that the members are " secret givers "— that is, they follow the admonition not to let their left hand know what their right hand is doing.

It maintains an office at 113 West Fifty-ninth street, Manhattan, and utilizes the services of an advertising firm in New York city.

The constitution and by-laws of petitioner provide:

" Article 2. Objects. The principal objects of the fellowship shall be to further the study of metaphysics and allied subjects;

to conduct classes, radio programmes and stage plays in connection therewith; to encourage and cultivate a taste for music, literature and the arts; to erect, purchase or rent and maintain one or more lodges or retreats where students of metaphysics may enjoy peaceful relaxation and study, and to do any and all things incidental and desirable toward a more intelligent and joyous life on the part of those interested."

At the hearing of September 17, 1940, Mr. Schafer testified (p. 16) that the events planned for the winter season included a fashion show, a halloween dance, and one or more costume balls and that " We have a grand time by ourselves." The petitioner's activities seem more social and fraternal than religious, educational or benevolent. So it is difficult for one not versed in metaphysics to determine from Mr. Schafer's testimony the exact purpose, manner of operation, and financial methods of the organization. However, visibility on this horizon seems to be clearing. The child destined to live forever has been returned to her natural mother and the Attorney-General of the State of New York and the district attorney of New York county are investigating the operation of the various corporations used by the Peace Haven group to conduct their transactions.

In an action entitled *People of the State of New York* v. *Peace Haven, The House of the New Commandment* (not reported), in the New York Supreme Court, New York County, petitioner, Mr. Schafer and his associates were restrained in a judgment made on January 6, 1941, by Mr. Justice McCook from selling transferable membership certificates of the corporation. There the Attorney-General alleged that the petitioner had sold 665 of such certificates to the general public for a total of $131,453 during the year 1940.

It is evident that petitioner was not, in good faith, organized and conducted exclusively for any of the purposes enumerated in subdivision 6 of section 4 of the Tax Law. It is not entitled to exemption from taxation. (*People ex rel. Masonic Hall Assn.* v. *White*, 218 App. Div. 38; affd., 244 N. Y. 564; *People ex rel. Outer Court, Inc.,* v. *Miller*, 161 Misc. 603; affd., 256 App. Div. 814; affd., 280 N. Y. 825; *Syracuse Center of Jehovah's Witnesses, Inc.,* v. *City of Syracuse*, 163 Misc. 535; *Lawrence-Smith School, Inc.,* v. *City of New York*, 166 id. 856; *People ex rel. Silver Lake Mutual Assn.* v. *Clark*, 125 id. 622; *People ex rel. Syracuse Masonic Temple* v. *Ostrander*, 105 id. 405; *Young Women's Christian Assn.* v. *City of New York*, 217 App. Div. 406; affd., 245 N. Y. 562.)

Motion granted.