COUNTY OF WESTCHESTER, Plaintiff, *v.* TOWN OF HARRISON, Defendant.

Supreme Court, Westchester County, December 15, 1951.

*Harry G. Herman, County Attorney (Francis J. Morgan* of counsel), for plaintiff.

*Orville C. Sanborn, Town Counsel,* for defendant.

FREDERICK P. CLOSE, Official Referee. This action is brought by the plaintiff to cancel certain taxes levied against its real property located in the town of Harrison, the defendant herein, and to declare such property exempt from taxation and assessments, upon the theory that it is held for a public use and that extrinsic facts are necessary to be proved in order to establish the illegality of the assessment made against the property. This is the ancient remedy known as a bill *quia timet* invoked to put an end to vexatious litigation and to prevent future litiga-

tion. It is now provided for by article 15 of the Real Property Law (cf. *Tysin* v. *City of New York*, 122 Misc. 627, 629).

In the years 1941 and 1942 the Board of Supervisors of the County of Westchester, by appropriate legislation, authorized the acquisition of land for an airport and landing field. Of the land purchased pursuant to such authorization 310.931 acres were situate in the town of Harrison.

After such purchase the county entered into certain contracts in writing with the Federal Government which agreements provided, in substance, that the Federal Government would construct the airport for the county and after such construction was completed, unless such airport was utilized exclusively for military purposes, it was to be operated by the county for the use and benefit of the general public, without unjust discrimination and without the grant or the exercise of any exclusive right for the use of the airport. The Federal Government proceeded with the work of construction of the airport. In September, 1944, it was so far completed that the county entered into a written agreement with the Federal Telephone & Radio Corporation for a use of a portion of the airport for experimental and scientific purposes in connection with certain contracts that that corporation had with the United States Government. This agreement was made subject to all the terms of the agreements between the County of Westchester and the Federal Government referred to above.

Thereafter, in January, 1945, the County of Westchester entered into a written agreement with the North American Airport Corporation for the operation of said airport for the benefit of the public and the benefit of Westchester County. The agreements with the two above-named corporations are both now in full force and effect and both provide for the payment of compensation to the County of Westchester.

For the years 1943 and 1944 the property while placed on the assessment roll was marked exempt with the exception of certain district taxes hereinafter referred to. In the year 1945 the property was assessed for general taxation and in 1946 taxes were extended against such assessment for town, county, State, school and district taxes. The total taxes extended against the real property included in the airport and the improvements thereon amounted to $10,098.55. It is to remove this alleged cloud upon the plaintiff's title that this action is brought.

There can exist no doubt as to the right of the county to acquire land for, construct, operate or lease a public airport

within the county (General Municipal Law, §§ 351, 352; *Hesse* v. *Rath,* 249 N. Y. 436; *People ex rel. Mayor of New York* v. *Board of Assessors,* 111 N. Y. 505; *Bush Terminal Co.* v. *City of New York,* 282 N. Y. 306; *Inhabitants of Wayland* v. *County Comrs. of Middlesex Co.,* 4 Gray [Mass.] 500).

The defendant argues that inasmuch as the lease to the Federal Telephone & Radio Corporation gave to that corporation exclusive control of the hangar to be erected by it to that extent at least the property is not used for a public purpose. This entire area contains several hundred acres. It is my conclusion, considering all the evidence before the court, that this property is held for a public use notwithstanding the terms of the lease above referred to. " The factors involved are often relative, not absolute, and the test may be one of degree " (*Bush Terminal Co.* v. *City of New York, supra,* p. 316, citing *Kaukauna Water Power Co.* v. *Green Bay & Miss. Canal Co.,* 142 U. S. 254).

Assuming that the property is held for a public use, is it exempt from all or only general taxation? It is conceded that portions of the property are located within certain districts in the town of Harrison. It is also conceded that the boundaries of those districts are not coterminous with the boundaries of the town but are composed of certain segments or parts of the town area. These districts are: Fire District Number 4; General Fire District Number 4 (Hydrant District); Mamaroneck Valley Sewer District.

The fire district was organized pursuant to the provisions of article 11 of the Town Law — section 181 provides that the expenses of such district shall be met by taxes levied and collected in the same manner as town taxes are assessed, levied and collected. Section 184-a of the Town Law provides in a similar manner for the creation of hydrant districts and for the assessment, levy and collection of taxes therein to pay the expenses thereof.

The Mamaroneck Valley Sewer District was created by an act of the Board of Supervisors of Westchester County pursuant to the authority of County Law, General Municipal Law and the act creating the Westchester County Sewer Commission (L. 1926, ch. 603, as amd.). Section 14 of that chapter provides that the cost of construction and of maintenance of such sewer districts shall be met by assessments apportioned against the assessable property in the district.

Under the authority of *People ex rel. New York School for Deaf* v. *Townsend* (173 Misc. 906, affd. without opinion, 261

App. Div. 841, affd. 298 N. Y. 645), I am constrained to hold that these district taxes are a valid lien on the plaintiff's property. The assessments for each district and the taxes for the year 1946 may be computed from the record as follows: Purpose of Special Assessment — Fire District No. 4 (Purchase Fire District), $526,130 assessment; $240.04 tax. Purpose of Special Assessment — General Fire Dist. No. 4 (Hydrant District), $75,000 assessment; $53.44 tax. Purpose of Special Assessment — Mamaroneck Valley Sanitary District (sewer tax), $23,310 assessment; $55.43 tax. Purpose of Special Assessment — Fire District No. 4, $28,840 assessment; $13.09 tax. The defendant argues with great force that the assessors, having jurisdiction to assess the property for these special taxes, acted legally and that their failure to mark the property as exempt was an erroneous exercise of their power and that consequently the only remedy left to the plaintiff was to proceed by certiorari to correct their error.

The plaintiff's argument is based upon the theory that, conceding that the assessors had power to assess the property for so-called district taxes, these are not taxes in the true sense but assessments on areas specifically benefited by the improvements for which the property is assessed, and the assessors acted illegally in assessing the property for general tax purposes.

There exists a broad and clear line of distinction between taxes or general taxes and special taxes or special assessments. The former are imposed for the support of government generally. In return the government's benefits are general in character and for the common welfare. A great French jurist more than two hundred years ago stated the problem succinctly in the following language: " The public revenues are a portion that each subject gives of his property in order to secure or enjoy the remainder." In that sense they do not include special assessments or special taxes imposed upon property in a specified limited area for the payment of improvements that enhance or purport to enhance the value of the property in such area (*Litchfield* v. *Vernon*, 41 N. Y. 123). It would seem to follow, that where such a distinction exists the assessors, while they may legally assess the property within the limited area for cost of local improvements, whether such cost is assured as a direct benefit upon a front foot or area basis (*Board of Educ.* v. *Town of Greenburgh*, 277 N. Y. 193) or upon *ad valorem* basis (*People ex rel. New York School for Deaf* v. *Townsend, supra*) are without authority to assess such property for general taxes where

the statute expressly exempts such property from general taxes as is the case here (Tax Law, § 4, subd. 3).

In the instant case the assessors had two duties to perform, one was to fix the fair and full market value of the property and if the property was exempt to so assess it. They had no authority to do otherwise. The other was to fix the fair and full value of that portion of the property located in the various districts and to indicate by proper entries that such portions were liable for the special district taxes.

The argument is advanced by the defendant that the plaintiff has mistaken its remedy for the reason that a portion of its lien is valid, therefore an action to remove a cloud on title will not lie. In support of its contention the defendant cites, among other authorities, *Sikora Realty Corp.* v. *City of New York* (262 N. Y. 312), and *Young Women's Christian Assn.* v. *City of New York* (217 App. Div. 406, affd. without opinion 245 N. Y. 562). The cases are distinguishable upon the ground that the question involved in both cases was overvaluation rather than illegality. In the *Sikora* case concededly the land without buildings was subject to taxation for all purposes. The error there was in failure to exempt the buildings, consequently the property was over valued for the purposes of local taxation. It was therefore not an illegal assessment but an erroneous assessment and the only relief was by certiorari proceedings. *Young Women's Christian Assn.* v. *City of New York (supra)* involved an alleged exemption from taxation based on subdivision 7 of section 4 of the Tax Law. The exemption granted by this section is limited to property used exclusively for the purpose for which the corporation was organized and for which the exemption was granted. The Tax Law expressly provided that if not used exclusively for such purpose that portion of the property not so used exclusively should be subject to general taxation. In that case a portion of the premises was used as a public restaurant and the patronage of the public was openly solicited. The profits made were not used directly for the benefit of the class named in the corporation's charter but for other corporate purposes. It was held that inasmuch as the property was only entitled to a partial exemption from general taxation the assessing officers had jurisdiction and their action could not be attacked as illegal. That at the most it was an overvaluation of the property by the improper inclusion of exempt property. This decision is in harmony with the ruling of the Court of Appeals in *National Bank of Chemung* v. *Elmira*

(53 N. Y. 49, 58), where the court pointed out the distinction between an erroneous and illegal assessment in the following language: '' The former is when the officers have the power to act, but err in the exercise of the power; the latter where they have no power to act at all ''.

Section 17 of the Westchester County Tax Law (L. 1916, ch. 105, as amd.) requires the supervisor to extend the tax on the assessment roll. The defendant town has an unusual local situation that for reasons of economy in rendering its tax bills brings about a rather extraordinary bill so far as its form is concerned. It has a total of twenty-two districts within the boundaries of the town on which it levies and collects special taxes or assessments. The tax bill as rendered to the taxpayer does not contain any breakdown of the items that enter into his total bill. He is, to be sure, shown by checkmarks what districts his property is in and the decimal rate for such district so that it is possible by a mathematical process to discover the various items that compose his total bill. It is by this method that the amount of the special taxes referred to above is obtained. It is possible, therefore, to determine the amount of the State, county and town taxes for the year here involved by subtracting the amount of the taxes for the various special districts, which for the period here involved amount to $364, from the total taxes levied, to wit, $10,098.55, leaving a balance of such total amount of $9,734.55 which I find are a cloud upon the plaintiff's title and which it is entitled to have cancelled.

It seems clear that the assessment of the plaintiff's property for general taxation is illegal. It does not seem logical to hold that the defendant by the manner in which it prepares its tax bill, can be combining all its various items into a single amount, deprive the plaintiff of the right to relief that it would otherwise possess.

Judgment will be granted canceling the taxes levied for State, county and town for the year 1946 and declaring the plaintiff's property exempt from such taxes in the future, with costs.

Submit judgment on two days' notice in my chambers at White Plains, December 20, 1951, at 10:00 A.M.