REPUBLIC OF FINLAND, Respondent, and UNITED STATES OF AMERICA, Intervenor-Respondent, *v.* TOWN OF PELHAM et al., Appellants, et al., Defendant.

Second Department, May 31, 1966

*Emanuel Schwartz* for Town of Pelham, appellant.

*William F. Weigel* and *Kenneth L. Everett* for Village of Pelham, appellant.

*Aranow, Brodsky, Bohlinger, Einhorn & Dann* (*William M. Kaplan, Robert Roy Dann* and *Martin E. Jacobs* of counsel), for respondent.

*Robert M. Morgenthau, United States Attorney* (*David E. Montgomery* and *Arthur S. Olick* of counsel), for intervenor-respondent.

CHRIST, J. This action under article 15 of the Real Property Actions and Proceedings Law is to determine the scope and effectiveness of a 1934 Treaty of Friendship, Commerce and Consular Rights between the United States of America and the plaintiff Republic of Finland. (49 U. S. Stat. 2659.) The issue is whether, under the tax exemption provision of the treaty, a parcel of real property in the Village of Pelham, owned by the Republic of Finland and used as the residence of its Consul General at New York, is exempt from certain ad valorem taxes variously imposed by the defendant local municipalities. The United States has been permitted to intervene on behalf of the Finnish position that the property is exempt from these local taxes.

The learned Justice at Special Term granted motions for summary judgment in favor of the Republic of Finland against appellants, and it was decreed in the judgment, *inter alia,* that: (a) all defendants were barred from any claim to an interest in the property by virtue of any filed assessments for town, village or school taxes which were unpaid; (b) the tax assessments were void and illegal; (c) defendants were to remove

from record any filed assessments or liens brought about by these taxes; and (d) the subject premises " shall remain exempt from any and all taxes, state, provincial and municipal, other than assessments levied for services or local public improvements by which the premises are benefited, so long as said premises are owned by the Republic of Finland and used as a residence for Consular officials of said Republic of Finland in the United States or for any other governmental purposes ".

Article 21 of the treaty provides in pertinent part: " Lands and buildings situated in the territory of either High Contracting Party, of which the other High Contracting Party is the legal or equitable owner and which are used exclusively for governmental purposes by that owner, shall be exempt from taxation of every kind, National, State, Provincial and Municipal, other than assessments levied for services or local public improvements by which the premises are benefited." (49 U. S. Stat. 2675.)

It is uncontroverted that each of the Governments of Finland and the United States has construed this article to exempt the residences of consular and other governmental officials, where the premises are owned by the other government.

The appellant municipalities strongly urge that the taxed parcel is not " used exclusively for governmental purposes " as provided for in article 21 of the treaty. They point out that the official business office of the Finnish Consul General is in Manhattan, 15 miles away from the subject property, which is primarily used as the residence of the Consul General and his family. The present Consul General deposed that " in addition to being used as my residence, the property owned by the plaintiff [Republic of Finland] is used by me for official duties, including the preparation of speeches, the study of official documents and the like and for official entertainment."

We meet squarely the argument that the residence use by the Consul destroys the exemption because this is not a governmental purpose; and that, no matter what governmental use is made of the property, there can be no exclusive governmental purpose, because of the residence use. Finland considers this residence use a governmental purpose, for it has expended its public money to purchase the property, presumably to make the position of Consul General more attractive, to give it greater dignity and rank and perhaps to provide some security.

We have in this country recognized that providing a residence for certain officials is a governmental purpose. The White House in Washington for the President, the Executive Mansion in Albany for the Governor, Gracie Mansion in New York City for

the Mayor and a suite in the Waldorf Towers for the Ambassador to the United Nations are examples of expenditures of public funds for the private living accommodations of public officials. This practice is common in the area of foreign, diplomatic and consular relations. We believe that the residence purpose is a governmental use by the Finnish Government and that the treaty standard of exclusive governmental purposes is met.

The United States of America contends that the taxation of this property "adversely affects its foreign policy." Our Federal Government, through the Departments of State and Justice, speaks out strongly against nonuniform interpretation of the tax-exemption clause in this treaty. It asks that the States and their municipalities be required to respect the expressed intentions of and practical interpretations by the two Governments involved. We regard the interpretations and implementation, accorded this treaty by the two signatory Governments, as compelling factors in determining what they intended by their treaty (*Kolovrat* v. *Oregon*, 366 U. S. 187; *Factor* v. *Laubenheimer*, 290 U. S. 276; and *Nielsen* v. *Johnson*, 279 U. S. 47).

A duly executed treaty is the supreme law of the land (U. S. Const., art. VI, cl. 2; *United States* v. *Pink*, 315 U. S. 203; *Hines* v. *Davidowitz*, 312 U. S. 52) and State and local laws must yield to its provisions. Flowing from this principle is the canon of construction requiring a liberal and expansive interpretation of treaties (*Kolovrat* v. *Oregon, supra*; *Bacardi Corp.* v. *Domenech*, 311 U. S. 150), including, as in this case, tax exemptions provided for by treaty although not specifically granted under local law (see *People ex rel. Andrews* v. *Cameron*, 140 App. Div. 76, affd. 200 N. Y. 585; *People ex rel. New York Lodge No. 1, B. P. O. E.* v. *Purdy*, 179 App. Div. 805, affd. 224 N. Y. 710, both standing for the proposition that local tax exemption laws should be strictly construed).

The Supreme Court of the United States has warned "that rules of international law should not be left to divergent and perhaps parochial state interpretations," emphasizing in its opinion the serious consequences and dangers of permitting interpretative conflicts to arise (*Banco Nacional de Cuba* v. *Sabbatino*, 376 U. S. 398, 425, 432–433; see, also, *United States* v. *Pink, supra*). We agree that the State or its civil divisions, including local municipalities, cannot frustrate the tax-exemption provision of the treaty between the United States and Finland as interpreted and implemented by the high contracting parties. This Finnish Consular residence may not be subjected to these taxes by appellants.

Turning to the second aspect of this appeal, we note that "assessments levied for services or local public improvements by which the premises are benefited" are, by the very words of the treaty provision, not shielded from taxation. The taxes imposed in this case are general town, village and school taxes; they are not local, special assessments for the benefit of the subject premises, as that concept is used in the cases which formulate the distinction (*Roosevelt Hosp.* v. *Mayor, etc., of N. Y.,* 84 N. Y. 108; see, also, *Matter of New York Tel. Co.* v. *Common Council of City of Rye,* 25 A D 2d 682, affg. 43 Misc 2d 668).

Accordingly, the order and judgment should be affirmed, with $10 costs and disbursements to each respondent.

UGHETTA, Acting P. J., HILL, RABIN and BENJAMIN, JJ., concur.

Order and judgment affirmed, with $10 costs and disbursements to each respondent.