William J. Crangle, Jr, J.
The petitioner seeks a review of tax assessments made by respondents on some of its parcels of real property and asks that the assessments for the year 1965 *146 •be cancelled upon the ground that these parcels are tax-exempt under section 420 of the Real Property Tax Law. The pertinent portions of the statute provide: ‘ ‘ Real property owned by a corporation * * # organized exclusively for the moral or mental improvement of men and women, or for religious * * * missionary * * * educational * * * [and] historical purposes * * * or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation as provided in this section.”
Petitioner is a membership corporation. It was organized in 1898 exclusively for purposes within the statute as evidenced by its certificate of incorporation: u The particular objects for which the corporation is to ,be formed are for missionary purposes under the direction of Roman Catholic clergymen and to disseminate knowledge of the work of the first Catholic Missionaries to the Indians and their converts, who labored and died in aiid around Auriesville, Montgomery County, in the State of New York, and to organize and conduct pilgrimages to such place, and in furtherance of these objects to publish and distribute books, periodicals, pamphlets, and leaflets relating thereto, and to provide suitable places for the carrying on of such works.”
After its organization it developed the site at Auriesville where the Mohawk Indian village of Ossernenon once existed and where Catholic missionaries to the Indian nation were enslaved, tortured and were finally martyred. Over the years since its incorporation petitioner has acquired approximately 600 acres of land in the area and has identified many of the places thereon where historical and religious events took place. It has erected shrines, statues, paths, roadways, maintenance shops, refit rooms, and rest areas used in connection with the religious activities conducted there. It has also erected a large church, an esplanade, and buildings for teaching and for the living requirements of clergy, students and employees staying at the shrine. None of these buildings or land so used are under consideration in this proceeding. They have not been assessed by the respondents and are tax-exempt.
On certain parcels of petitioner’s property, however, it has built a cafeteria, a dining hall, a parking area used in connection therewith, a hotel called Shrine Inn, a building for overflow of hotel guests, called Priests’ Mansion, and a building for housing visiting nuns called Sisters’ Convent. These buildings and land have been assessed and remain the subject of this proceeding. They comprise about 76 acres of the 600 acres of land owned by *147 petitioner. With the exception of Sisters’ Convent which is used exclusively for housing Catholic nuns the remaining buildings and land just mentioned are used to provide meals and lodging to any and all persons who apply.
Petitioner contends that this use falls within the exempting statute and argues that feeding and housing the people who visit the shrine is necessary and fairly incidental to the carrying out of the exempt purposes of petitioner and that if others come only for food and lodging they may not be turned away since this would be foreign to the principles of its missionary work.
A review of the precedents interpreting section 420 of the Beal Property Tax Law and f ormer subdivision 6 of section 4 of the Tax Law with respect to the meaning of the words “used exclusively for carrying out thereupon one or more of such purposes ” makes it possible to discern a profile of use beyond the lines of which the owner enters a field of commercial activity unentitled to exempt status. Although it has been held that a tax-exempt status may be maintained even though the use is of a commercial nature and incidentally competes with private business such use must always be associated with and strongly supportive of the purpose protected by the statute. In Bush Term. Co. v. City of New York (282 N. Y. 306), the court in upholding the exemption, held that the income producing use was necessary and that without it the public purpose creating the tax exemption could not be carried out.
In a case where a Y. W. C. A. operated a cafeteria where the public was served the exemption was denied as to that portion of the premises housing the cafeteria even though the net profits of the cafeteria were used for the general charitable purposes of the corporation and a large percentage of the persons using the facility were members of the Y. W. C. A. (Young Women’s Christian Assn. v. City of New York, 217 App. Div. 406.) The exemption was also denied where a Y. M. C. A. owned a public hall as an investment. (People ex rel. Young Men’s Assn. v. Sayles, 32 App. Div. 197, affd. 157 N. Y. 677.) In another case a church society invested in an auditorium which it leased for general public use. The court indicated that it was the Legislature’s intent to discourage charitable corporations from embarking on outside enterprises not directly connected with their charitable purposes. (People ex rel. Catholic Union of City of Albany v. Sayles, 32 App. Div. 203.)
Later cases upholding the exemption carefully point out in what manner the particular use under consideration is in reality a part of the charitable, educational and religious purpose. Thus in People ex rel. Clarkson Coll. v. Haggett (300 N. Y. 595) the *148 college owned and collected rents upon private residences in which it housed faculty members and undergraduates; in Matter of DeMott v. Notey (3 N Y 2d 116) a hospital received rents from two houses which were occupied by hospital employees: in Matter of Pace Coll. v. Boyland (4 N Y 2d 528) a cafeteria run by the college on its premises was restricted to the use of students, faculty and staff, and a uniformed guard was employed to prevent other persons from using the facility and a sign indicated that it was not open to the public; a Y. M. C. A. dining room restricted to members only was held to be exempt (People ex rel. Young Men’s Christian Assn. v. Miller (253 App. Div. 804, affd. 278 N. Y. 651) ; apartment houses owned by a hospital were held exempt to the extent they were rented to hospital personnel (Matter of St. Luke’s Hosp. v. Boyland, 12 N Y 2d 135); so was a hospital parking lot which was restricted to the use of hospital employees and visitors to hospital patients whose visits were- considered “ supportive therapy ” for the patients. (Ellis Hosp. v. Fredette, Sup. Ct., Schenectady County, July 22, 1966, affd. 27 A D 2d 390 [3d Dept., May, 1967].)
In an earlier ease a religious corporation promoted conferences for workers in religious organizations by providing a Summer recreation home and training school for such workers. In holding its real property exempt because its use, upon the whole, was exclusively for students and members engaging in religious training, the court condemned the practice of accepting guests from the general public even occasionally in these words: “This hotel should be treated as if it did not exist for the patronage of the public” (Silver Bay Assn. v. Braisted, 80 N. Y. S. 2d 548, 555, affd. 196 App. Div. 913.)
The petitioner herein would have the line, so firmly drawn by these cases, extended to include a use which involves the sale of restaurant meals and overnight accommodations to the general public. The' Shrine Inn restaurant and cafeteria are designed and advertised to attract the public. As a witness for petitioner implied, it is not in the nature of an evangelical group to exclude anyone. All people are invited, and none are excluded from the restaurant, cafeteria or hotel because they are not active in the religious and educational program offered at the shrine. The restaurant is a large, tastefully decorated modern building prominently situated overlooking the Mohawk Valley. It is much the larger and more important of the buildings in question. Several highways and lesser roads pass by. Signs ■are posted inviting the public to the shrine. The restaurant and hotel are near the front gate in full view from the highway and the hotel bears a large sign reading “ Guests ”. There is no *149 direct evidence of the proportion between those who merely go to -the restaurant and hotel as they would go to any other place for food and lodging and those who use these facilities as an incident to their pilgrimage to the shrine. However, the circumstances make it clear that the restaurant particularly is patronized by many of the former as a pleasantly situated country restaurant for general use during the Summer season and by many who make the stop while on bus and automobile tours to visit the area as one of the ‘1 outstanding tourist stops in this part of the country” to quote from advertising sponsored by petitioner.
The shrine is located a few minutes drive from a city and several villages. The area is replete with restaurants and motels. These nonreligious facilities at the shrine are, therefore, a convenience but not a necessity for the pilgrims attending the religious services and activities.
The fact that the restaurant is operated by a concessioner under a contract with the shrine is not decisive upon the question of exemption. (Matter of Pace Coll. v. Boyland, 4 N Y 2d 528.) Nor is the fact that when amortization costs are taken into consideration the shrine makes no profit from the restaurant operation. The making of a profit would not remove the property from exempt status if it otherwise met the requirements of the statute. Nor does the failure to make a profit upon a nonexempting use change the nature of that use. (People ex rel. Watchtower, Inc. v. haring 8 N Y 2d 350.)
The cafeteria, dining hall, hotel buildings and land used and associated therewith such as the parking lot and leech field are not, therefore, under their present use, tax-exempt. The Sisters’ Convent is used exclusively for a purpose incidental to the shrine’s work and is therefore exempt. The petition is dismissed except as to approximately 3 acres of parcel numbered 2 used by the petitioner as a disposal area, that portion of parcel numbered 5 used for a maintenance building and a storage building thereon used by the Tertianship House, that portion of parcel numbered 6 occupied by Sisters’ Convent and all of parcel numbered 7. As to these exceptions the assessment is held to be illegal. Formal findings of fact have been signed in addition to the findings implicit in this decison. An order may be submitted directing correction of the tax assessment roll accordingly.